Don W. **SLUDER**

v.

C. Murray **HENDERSON**, Warden, Louisiana State Penitentiary.

Don W. **SLUDER**

v.

C. Murray **HENDERSON**, Warden, Louisiana State Penitentiary.

Misc. Nos. 1756, 1757.

United States District Court,
E. D. Louisiana,
New Orleans Division.

March 23, 1971.

---

1. Clearly the language of 26 U.S.C. § 6502(a) allows such a provision.

Michael L. McAlpine, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for petitioner.

Byron P. Legendre, Asst. Dist. Atty., New Orleans, La., for respondent.

BOYLE, District Judge:

The petitioner is presently confined in the Louisiana State Penitentiary, where he is serving a 50-year sentence for armed robbery.

On June 27, 1967, petitioner pled guilty to the charge of armed robbery in Criminal Action No. 198–983, before Judge Frank Shea of the Orleans Parish Criminal Court, and was sentenced to a term of 25 years.

On August 28, 1967, petitioner pled guilty to a charge of armed robbery in Criminal Action No. 199–047, before Judge Edward Haggerty, Jr., and was sentenced to a term of 25 years, said sentence pronounced by the Court "under the provisions of Article 883 of the Louisiana Code of Criminal Procedure." [1]

On September 15, 1967, petitioner pled guilty to the charge of armed robbery in Criminal Action No. 198–993, before Judge Matthew Braniff, and was sentenced to a term of 25 years, to run concurrently with the other sentences imposed.

The Louisiana statute denouncing armed robbery provides a penalty of imprisonment at hard labor of "not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence," 14 L.R.S. 64.

The defendant filed a letter of complaint with Judge Haggerty relative to the imposition of sentence under Article 883 after having been informed by prison authorities that the sentence in 199–047 was to be served consecutively to the sentence in 198–983. When this complaint brought no relief, Sluder filed a habeas application in the Louisiana Supreme Court, which was denied. The petitioner then filed for habeas relief in this Court on May 11, 1970.

On October 22, 1970, an evidentiary hearing was held. Counsel for the petitioner stipulated the issues to be tried to be those presented by petitioner's claims that:

1. the pleas of guilty in all three cases were involuntary,

2. counsel for petitioner in the State Court proceedings was ineffective in all proceedings, and

3. petitioner's sentence in 199–047 was unconstitutionally vague and indefinite, and was computed not by the Judge, but by state administrative officers, under Article 883.

Petitioner was arrested at his home in Slidell and taken to the Slidell police station, and, from there, to New Orleans, where he was wanted. Sluder testified at the evidentiary hearing that he was neither advised of his constitutional rights nor allowed to call his attorney before he was taken from his home.

Sluder was taken to New Orleans central lockup, where he called his attorney, Arthur Dumaine.[2] Dumaine arrived at

1. "If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently."

2. Sluder had known Dumaine since 1966, when Dumaine defended him successfully on a forgery charge in St. Bernard Parish. After that case, Sluder and Dumaine saw each other socially and were casual friends.

about 9:00 A.M. Sluder claims the police had threatened him with a 99-year sentence if he did not confess, but he made no confession.

While at central lockup, Sluder was placed in a lineup. Dumaine testified that he did not see fit to attend the lineup or the initial interrogation.

Sluder was remanded to Orleans Parish Prison to await trial on five state armed robbery charges. During the five or six months spent in Parish Prison, Sluder was interviewed four or five times by Dumaine. Sluder and Dumaine discussed the facts of the case and possible defenses. Dumaine advised Sluder of the maximum and minimum penalties for the offenses with which he was charged, and of the fact that Sluder could be double billed and charged as a habitual offender.[3] Dumaine conferred with the District Attorney, and after having examined the State's evidence, and having been told by Sluder that he could be positively identified, Dumaine advised Sluder to plead guilty. Dumaine spoke to the three judges before whom the cases had been set, and was advised that if Sluder were to plead guilty, he would receive a total of fifty years imprisonment. Dumaine discussed the case and the possible maximum sentences with Mrs. Sluder and told her of his advice that Sluder should plead

guilty. Mrs. Sluder subsequently asked her husband to plead guilty.

Sometime before July 27, 1967, Dumaine made Sluder aware of the developments in the cases, and Sluder agreed to plead guilty in Nos. 199–047, 198–983, and 198–993.

Before the first plea (before Judge Shea) was entered, Dumaine, who had discussed sentence with all three of the Judges involved, advised Sluder that Judge Shea would impose a 25-year sentence and that his ultimate total term of imprisonment in the cases would be 50 years, which it turned out to be. Two other similar cases were also pending against Sluder, but were not prosecuted following disposition of the three with which we are concerned in this proceeding.

Sluder, of course, maintains his innocence in all cases, claims Dumaine told him he would receive a five-year sentence before Judge Shea, denied Dumaine discussed his defenses with him, claimed Dumaine told him all other cases would be dropped if he pleaded guilty before Judge Shea, denied he was advised by Dumaine of the sentence to be imposed by Judge Haggerty and, though he now complains generally about Dumaine's representation, acknowledged he was satisfied with Dumaine's services until sentence was imposed by Judge

---

3. La.R.S. 15:529.1, the La.Habitual Offender Law, provides in pertinent part:
"A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state upon conviction of said felony shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction;

(2) If the third felony is such that, upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for any term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
(3) If the fourth or subsequent felony is such that, upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for the fourth subsequent felony for a determinate term not less than the longest term prescribed for a first conviction and not more than his natural life and in no case less than twenty years."

Shea. Notwithstanding his then dissatisfaction, he continued to accept Dumaine's services, and did not seek other counsel, between June 27, 1967, when he was sentenced by Judge Shea, and September 15, 1967, when he pleaded guilty before and was sentenced by Judge Braniff, after having pleaded guilty before and having been sentenced by Judge Haggerty on August 28, 1967, two months after he claims to have become dissatisfied with Dumaine's representation.

Before the plea before Judge Haggerty, Dumaine, the Judge, and Assistant District Attorney Joseph Marcal conferred. At that meeting, Dumaine asked that Sluder be sentenced under the provisions of Article 883, Louisiana Code of Criminal Procedure. Dumaine testified that he had hoped the prison administrators might construe such a sentence as concurrent, and so requested that the sentence be pronounced without reference to its consecutive nature.

Judge Haggerty told Dumaine to inform his client that the sentence would run consecutively to that imposed by Judge Shea.

Dumaine testified that he told Sluder before the plea that he had requested the sentence be imposed under Article 883 so that the word "consecutive" would not appear on the record. He told Sluder that this request was made in the hope that the prison officials might construe the sentence to be concurrent. He informed his client further that the Judge intended the sentence to be consecutive and, unless the Angola officials interpreted it otherwise, the sentence would in fact be consecutive to that imposed by Judge Shea.

When Dumaine and Sluder appeared before Judge Haggerty, Dumaine withdrew the plea of not guilty and entered a plea of guilty on behalf of his client. The Judge did not, at that time, question Sluder concerning the change of plea.

On his arrival at Angola, Sluder told the convict clerk that he had been sentenced to three concurrent terms of 25 years.

Joseph Marcal, who was the Assistant District Attorney in charge of the case before Judge Haggerty, testified at the evidentiary hearing. According to Marcal's best recollection, the Judge wanted the sentence to run consecutively. Marcal sent a letter to the Warden at Angola on October 18, 1967, indicating that the sentence in 199–047 was to be served consecutively following that in 198–983. Marcal testified that he sent this letter because, in his experience, Warden Henderson often allowed defendants to serve concurrent time when consecutive time was intended by the sentencing Judge.

Judge Haggerty testified that he had told Dumaine the sentence in 199–047 would not be served concurrently with that in 198–983 because the offenses charged were not interrelated. The Judge also agreed to Dumaine's request that sentence be imposed under the provisions of Article 883.

Sluder contends that his sentence under Article 883 is vague and indefinite. He does not allege that Article 883 is unconstitutional on its face, but that its application in his case resulted in an unconstitutional denial of due process. On the facts which developed at the evidentiary hearing, we find no basis for this claim. The facts show that Judge Haggerty determined after having considered the records in 198–983 and 199–047 that the sentence in 199–047 should be consecutive to that imposed in 198–983 since he regarded the offenses to be unrelated. This decision was communicated to Sluder's counsel and by counsel to Sluder prior to the entering of the plea of guilty. The use of the term "under the provisions of Article 883, Louisiana Code of Criminal Procedure" was at the suggestion of counsel for the petitioner, of which petitioner was aware and in which he acquiesced. All parties knew at the time sentence was imposed, therefore, that it was to be a consecutive sentence.

█ The evidence adduced at the hearing convinces us that petitioner was

aware before entering his plea that Judge Haggerty intended his sentence to be imposed would be consecutive to that imposed by Judge Shea.

■ The informations in the three cases clearly show on their face that the offenses charged were not "based on the same act or transaction" and did not constitute "parts of a common scheme or plan." Although each charges the offense of armed robbery, the alleged date of the offense and the victim are different in each.[4] Under the express language of Article 883 in such circumstances and where the Court does not direct that the sentence be served concurrently with another sentence, the sentence "shall be served consecutively." Judge Haggerty imposed a sentence of 25 years "under Article 883 of the La. Code of Criminal Procedure"[5] and did not direct that the sentence be served concurrently, a fact which is conceded.

■ Considering our findings and conclusions herein, we do not reach the constitutional question. Ashwander v. TVA, 297 U.S. 288, 346–348, 56 S.Ct. 466, 482–484, 80 L.Ed. 688 (1936); Byers v. Byers, 254 F.2d 205 (5 Cir. 1958); Woodard v. General Motors Corp., 298 F.2d 121 (5 Cir. 1962); Texas v. Grundstrom, 404 F.2d 644 (5 Cir. 1968).

■■ A guilty plea is not rendered invalid solely because it is the result of a plea bargaining situation. Eason v. Beto, 434 F.2d 240 (5 Cir. 1970); Schnautz v. Beto, 416 F.2d 214 (5 Cir. 1969); Parrish v. Beto, 414 F.2d 770 (5 Cir. 1969); Rogers v. Wainwright, 394 F.2d 492 (5 Cir. 1968); see also N. Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). It appears that Dumaine, an attorney with six years' experience in handling criminal cases, advised both Sluder and his wife to plead guilty because of his conclusion of probability of a conviction based on his inspection of the State prosecutor's file and Sluder's advice that he, Sluder could be identified if the cases went to trial, in which event sentences in each case of up to 99 years were possible, plus the imposition of a further penalty under the habitual offender statute, facts which were made known by Dumaine to Sluder. Sluder acknowledged that before pleading guilty before Judge Haggerty he discussed the matter with his wife and agreed with her that he would plead guilty before Judge Haggerty. Mrs. Sluder testified she asked her husband to plead guilty. Also, Dumaine and Mrs. Sluder testified that Sluder did not complain of Dumaine's representation until after his arrival at Angola.

■ We find the guilty pleas in these cases were understandingly and voluntarily made, and being so made they constitute a waiver by petitioner of "all non-jurisdictional defects in the prior proceedings against him." Busby v. Holman, 356 F.2d 75, 77 (5 Cir. 1966); Zales v. Henderson, 433 F.2d 20 (5 Cir. 1970). The defects waived include illegal detention, Hamilton v. Florida, 390 F.2d 872 (5 Cir. 1968) and incompetent counsel where no showing is made, as is the case here, that the claimed incompetence brought about an involuntary plea of guilty. Hamilton v. Florida, supra. On the record here, we cannot conclude that Mr. Dumaine did not competently advise and represent the petitioner.

■ Although there were no interrogations of petitioner by the sentencing Judges prior to acceptance of the pleas of guilty, Boykin v. Ala., 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969),

---

4. In No. 198–983, the case before Judge Shea, it is charged that Sluder, alone, on March 21, 1967 robbed one William Burns. In No. 198–993, the case before Judge Braniff, it is charged that Sluder, Lonnie Faison and Archie Davis on April 5, 1967 robbed one Bernice Moss. In No. 199–047, the case before Judge Haggerty, it is charged that Sluder and Lonnie Gene Faison on April 7, 1971 robbed one James Steiner.

5. See Minute Entry of August 28, 1967 in No. 199–047.

does not apply to this petitioner. Such an interrogation is required prior to pleas in federal courts by Rule 11, Federal Rules of Criminal Procedure and McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *Boykin* makes the *McCarthy* rule applicable to the states; however, *McCarthy* must be read together with Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), which holds that *McCarthy* is not retroactive. Since petitioner's plea was made in 1967 and McCarthy was decided in April, 1969, the state court judges were not obliged to interrogate petitioner on his pleas of guilty.

■■■■■■ Allegations of a state prisoner with respect to alleged inadequacy of privately retained counsel states no basis for federal relief, absent a showing of incompetency which resulted in an invalid plea of guilty or denial of a right guaranteed by the Federal Constitution. The evidence here falls far short of such a showing. Cade v. Balkcom, 361 F.2d 212 (5 Cir. 1966); Kennedy v. United States, 259 F.2d 883 (5 Cir. 1958), cert. den. 359 U.S. 994, 79 S. Ct. 1126, 3 L.Ed.2d 982.

■■■■ It is well settled that the petitioner must prove by a preponderance of the evidence that a constitutional right has been violated before he may be granted relief on a habeas corpus petition. Irving v. Breazeale, 400 F.2d 231 (5 Cir. 1968); Tyler v. Beto, 391 F.2d 993 (5 Cir. 1968); cert. den. 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574; Walker v. Beto, 387 F.2d 626 (5 Cir. 1967).

■■■■ This burden is not borne when petitioner's allegations, supported, as they are, only by his testimony, which we are unable to credit in many significant areas, are clearly contradicted by credible testimony to the contrary. Stanley v. Peyton, 292 F.Supp. 209 (W. D.Va.1968); Jackson v. Sanford, 79 F. Supp. 74 (D.C.Ga.1948); United States

ex rel. Darcy v. Handy, 351 U.S. 454, 76 S.Ct. 965, 100 L.Ed. 1331 (1956).

Accordingly, it is the judgment of this Court that the petitions of Don W. Sluder for a writ of habeas corpus should be and the same are hereby dismissed.