STATE of North Dakota, Plaintiff
and Appellee,

v.

Robert LUEDER, Defendant
and Appellant.

Crim. No. 536.

Supreme Court of North Dakota.

May 12, 1976.

Rehearing Denied June 10, 1976.

Thomas B. Jelliff, State's Atty., Earle R. Myers, Jr., Asst. State's Atty., and Gregory P. Johnson, Senior Law Student, Grand Forks, for plaintiff and appellee State of North Dakota.

Robert Lueder, pro se.

VOGEL, Justice.

The appellant (hereinafter described as defendant), presently confined in a Federal penitentiary, appeals from the denial by the district court of Grand Forks County of what he calls a "Petition for a Writ of Error Coram Nobis." This writ is unknown

to the law of this Code State.[1] We will treat the petition as one for post-conviction relief under Chapter 29–32, North Dakota Century Code, the Uniform Post-Conviction Procedure Act, as the trial court did.

The proceeding was commenced in Grand Forks County and challenges a conviction and sentence upon a plea of guilty to a charge of robbery in that county. Sentence was imposed on January 29, 1965.

We grant defendant's motion to appeal in forma pauperis.

Both sides waived oral argument. The State at first declined to file a brief, but, upon the suggestion of this court that one should be filed, submitted a brief covering one issue only.

■ The defendant makes many claims of error as to proceedings against him. Some of them relate to a prior conviction and sentence in Ward County. Obviously, the district court of Grand Forks County has no power to grant relief from errors, if any, which occurred in a different proceeding in a different county in a different district. Application for post-conviction relief should have been made to the district court where the petitioner was convicted. *Smith v. State*, 236 N.W.2d 632 (N.D.1975). To the extent that the Ward County proceedings affected the Grand Forks County proceedings, we will consider and discuss them.

The defendant makes these claims, in addition to claims having no legal significance whatever, as to the Grand Forks County proceeding: (1) that the waiver of juvenile court jurisdiction in his case was made without a hearing and without the assistance of counsel; (2) that his rights were violated by the failure of the State to provide him with counsel during interrogation; (3) that a confession of the Grand Forks County offense had been obtained from him in Ward County by promises that he would

not be tried as an adult and would be sent to the Industrial School; (4) that he attempted suicide twice and suggested psychiatric evaluation and treatment and that these facts should have caused the court, on its own motion, to hold a hearing as to his competency; (5) that his parents retained counsel for him by order of the court; (6) that he had only fifteen minutes to consult with his attorney and was told that he would be sent to the State Hospital for psychiatric treatment instead of to prison; and (7) that publicity prevented a fair trial. We will consider these contentions in the order given.

## I

■ The first issue is the only issue briefed by the State. It points out that the requirement of a hearing upon a waiver of juvenile jurisdiction was first imposed in the case of *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, in 1966, and that the rule in *Kent* is generally held not to be retroactive, citing *Huffman v. State of Missouri*, 399 F.Supp. 1196 (W.D. Mo.1975); *Akins v. Cardwell*, 500 F.2d 47 (9th Cir. 1974); *Harris v. Procunier*, 498 F.2d 576 (9th Cir. en banc 1974); *Brumley v. Charles R. Denney Juvenile Center*, 77 Wash.2d 702, 466 P.2d 481 (1970); *Bouge v. Reed*, 254 Or. 418, 459 P.2d 869 (1969); and *Mordecai v. United States*, 137 U.S.App. D.C. 198, 421 F.2d 1133 (1969), *cert. denied*, 397 U.S. 977, 90 S.Ct. 1098, 25 L.Ed.2d 272 (1970). *Contra, Kemplen v. State of Maryland*, 428 F.2d 169 (4th Cir. 1970); *Inge v. Slayton*, 395 F.Supp. 560 (E.D.Va.1975). We agree with the majority rule, and therefore hold that the waiver of juvenile jurisdiction in this case, which occurred in 1965, without a hearing, violated no constitutional provision then in effect.

■ Nor did it violate any State statute. The statute in effect at that time was Sec-

---

1. The writ of coram nobis was available at common law to correct errors of fact that affect the validity and regularity of judgments in both civil and criminal courts. A remedy in the nature of a writ of error coram nobis is available in the Federal courts to a State prisoner who attacks the validity of his Federal conviction in order to reduce his State sentence. See *United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); Wright, Federal Practice & Procedure, § 592, n. 68; 24 C.J.S. Criminal Law § 1606.

tion 27–16–13, N.D.C.C., which provided that a child fourteen years or older, charged with the commission of an offense, could be proceeded against as an adult in the discretion of a judge of the juvenile court. The statute now in effect, Section 27–20–34, N.D.C.C., requires a hearing, but it was adopted in 1969, long after jurisdiction over the defendant was waived.

## II

The defendant seems to claim that all persons questioned by law-enforcement officials are entitled to an attorney during interrogation. This is not the law. They are entitled to a retained attorney or, if they are indigent, a court-appointed attorney only if the investigation has focused upon them and they have been taken into custody or otherwise deprived of their freedom of action in any significant way. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1967); *People v. Miller,* 71 Cal.2d 459, 78 Cal.Rptr. 449, 455 P.2d 377 (1969); *Gelhaar v. State,* 58 Wis.2d 547, 207 N.W.2d 88 (1973); *State v. Iverson,* 187 N.W.2d 1 (N.D.1971). The defendant makes no showing of his right to a court-appointed attorney or of a request for other counsel during or prior to interrogation.

## III

The defendant alleges that during the period when he was arrested for the Ward County violation he "was interrogated without the assistance of counsel, and eventually 'confessed' to his participation in two armed robberies allegedly having been committed in the District of Grand Forks." Later, he says that the later conviction in Grand Forks was obtained by "using a 'confession' coerced" from him. The transcript, however, indicates that the confession was never mentioned in the Grand Forks court proceeding until after the plea of guilty and during the sentencing proceeding. There is no showing that it was "used" to obtain the conviction.

When we examine the record to find a basis for the allegation that the confession was obtained by coercion or promises of lenient treatment, we find the documentation is sadly lacking. There is an unsupported allegation that "all parties concerned" told the defendant that he would not be tried in Grand Forks for the robbery, that he would not be tried as an adult and sent to the penitentiary, and that he would be sent to the Industrial School as a juvenile offender based on charges in Ward County. Nowhere are the "all parties concerned" identified, and nowhere are any other details given. See *Smith v. State,* 236 N.W.2d 632 (N.D.1975), holding that an application for post-conviction relief will be denied where alleged "unconstitutional errors" are not specified.

A separate allegation is made that defendant's counsel at the Grand Forks hearing informed him that if he pleaded guilty he would be sent to the State Hospital for psychiatric treatment instead of prison. On this point the appellant refers us to page 8, lines 22 to 25, of the transcript where his attorney said:

> "We have discussed this thoroughly with his parents and it was after much deliberation that we have recommended to the Defendant to plead guilty as he wanted to do and further we submit this statement to the Court. Thank you."

Prior to the quoted language the attorney had argued at length for an indeterminate sentence of three to fifteen years and had recommended psychiatric evaluation during the sentence. The recommendation of the State's Attorney was an indeterminate sentence of five to fifteen years.

We find nothing in this record to support the claim of the defendant that a confession was obtained from him by promises of lenient treatment or that he was misled by his attorney. We will return to this matter shortly.

It may very well be that the defendant was told at the Ward County hearing that he would be sent to the Industrial School. He was sent there upon sentence following conviction on the Ward County charge, and while there was unmanageable and was returned to the Ward County court for fur-

ther action. If he has any complaints on these matters, they should be directed to the Ward County district court, not the Grand Forks County district court. (The present record gives no justification for any complaint against the Ward County district court.)

## IV

■ The defendant alleges that he attempted suicide twice and was mentally disturbed, and that his attorney asked that he be sent to the State Hospital for psychiatric treatment, and that these facts constitute sufficient notice to the district court so that the court, without any request by anyone, should have held a hearing as to whether the defendant was competent to stand trial, citing *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

We have examined the attorney's statement to the court. He attributes the criminal conduct of the defendant to the fact that he had spent many years in Morocco, where his father was assigned by the Air Force, during the years when French North Africa was achieving its independence and where he was surrounded by violence. The attorney also mentioned the suicide of the defendant's sister. He argued for a minimum sentence of three years, because he was of the opinion that the defendant would complete any psychiatric treatment prior to the expiration of his minimum period of detention and should then be released. He stated his impression that the defendant was "above average intelligence and that he understands these things, he recognizes that there is something that forces him to do these things over which he doesn't seem to have control and he has requested and he is hoping that he can be submitted to the State Hospital for some treatment." (This is the language which immediately precedes the portion of the transcript quoted under III, above.)

We recently had occasion to discuss the rule of *Dusky v. United States, supra,* in *State v. Fischer,* 231 N.W.2d 147 (N.D.1975). We also discussed Section 29–20–01, N.D.

C.C., which provides that if a court has reasonable ground, before or during the trial, to believe that a defendant is insane or mentally defective to the extent that he is unable to understand the proceedings against him or assist in his defense, it shall hold a hearing to determine his mental condition.

While two members of this court dissented in *State v. Fischer, supra,* believing that the facts in that case required a competency hearing, we are unanimously of the opinion that the facts in the present case do not require such a hearing. A mere request for observation and treatment in a mental institution, coupled with the statement of the attorney that the defendant is above average intelligence and has discussed with his attorney the several alternatives available for sentencing, is insufficient to require the holding of a competency hearing on the court's own initiative, under the rule of *Dusky v. United States, supra,* or the North Dakota statute, Section 29–20–01, N.D.C.C. A desire or need for psychiatric help is not the equivalent of lack of competency to stand trial.

We note that there is no mention in the transcript of any attempts at suicide, but do not suggest that the ruling would be any different if such attempts had been called to the attention of the court.

## V

■ The defendant at first asked for an attorney. The county court pointed out that his parents were able to retain counsel for him, and declined to appoint an attorney. The defendant responded that if his father had to pay he didn't want any attorney. Nevertheless, the county court, which conducted the interrogation, postponed the hearing. At a later date, when the matter was called for arraignment, the defendant appeared with a retained attorney. Both of them stated that the attorney represented the defendant. Both stated that they had conferred, and the defendant stated that they had conferred several times. We find no error in this procedure. The transcript does not indicate that the court ordered, or

could order, the parents to retain counsel for the defendant. When a defendant appears with counsel the court has no reason to question the representation or the source of his fees, if any.

## VI

 The transcript references to the multiple meetings of the defendant and his attorney effectively disprove defendant's claim that he had only fifteen minutes to consult with the attorney. We have already referred to the alleged promises that the defendant would be sent to the State Hospital instead of to prison.

## VII

The defendant attaches to his pleadings photocopies of several news stories about his arrests and convictions in Ward County and in Grand Forks County. Aside from the bare assertion that publicity prevented a fair trial, no basis is given for any claim of prejudice. No claim is made that a fair trial could not be had in Grand Forks County, that the plea of guilty was made because of the impossibility of a fair trial, or that the publicity prejudiced the judge who accepted the plea of guilty. Even if such allegations had been made, some proof of prejudice would be required. See *State v. Gordon,* 32 N.D. 31, 155 N.W. 59 (1915), and *State v. Pusch,* 77 N.D. 860, 46 N.W.2d 508 (1951). Statements of conclusions are not enough. *State v. Gugel,* 65 N.D. 587, 260 N.W. 581 (1935). In order to raise and preserve a claim of prejudice by adverse publicity, the party asserting error must in some way call the matter to the attention of the trial court and obtain a ruling. *State v. Pusch, supra.*

We find no error.

The decision of the district court denying post-conviction relief is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.