STATE of North Dakota, Appellee,

v.

Robert M. LUEDER, Appellant.

Cr. No. 580.

Supreme Court of North Dakota.

April 7, 1977.

Robert M. Lueder, pro se; submitted without oral argument.

David L. Drey, State's Atty., Minot, for appellee; submitted without oral argument.

ERICKSTAD, Chief Justice.

In this instance we have pending before us an appeal by Robert M. Lueder from an order of the district court of Ward County which denied his petition pro se to vacate a judgment and sentence of six months in the Ward County jail, imposed by the district court on January 7, 1965, after conviction for burglary of a laundromat in Minot.

Lueder asserts that he seeks relief under the provisions of Chapter 29–32, N.D.C.C., the Uniform Post-Conviction Procedure Act. He states that he seeks to collaterally attack the judgment and sentence and that he is entitled to relief therefrom, pursuant to the Uniform Post-Conviction Procedure Act because of constitutional infirmities in the proceedings and prejudice which resulted therefrom. As the six-month sentence was suspended by the district court so that Lueder could be transported to the county of Grand Forks for prosecution on two charges of robbery arising out of incidents involving two gasoline-filling stations there, one might have cause to wonder why, at this late date, he seeks to have a sentence, which he has not served and is likely never to serve, vacated.

The answer appears to relate to the fact that this conviction of burglary was used as one of three prior convictions to increase the sentence imposed by the United States

District Court for the District of Oregon in conjunction with his violation of Title 18, United States Code, § 2113(a).

Pertinent thereto is the following from the forty-page motion and brief filed with the trial court.

"Petitioner is presently serving a twenty year sentence in the Atlanta Federal Penitentiary, in Atlanta, Georgia, for violation of Title 18, United States Code, Section 2113(a), imposed on August 30, 1972, in the United States District Court, District of Oregon, Portland, Oregon, by the Honorable J. M. Burns, U.S.D.J., and which sentence, although within statutory limits, was imposed on the assumption that petitioner had three prior convictions, one of which consists of Burglary, the conviction under attack in the instant case, and wherefore, the conviction of burglary emanating in Ward County District Court, Minot, North Dakota, Criminal File No. 5135, was used as a recidivist in order to enhance punishment in the District of Oregon."

We note that Title 18, § 2113(a), U.S.C.A., involving bank robbery and incidental crimes, permits a sentence of a fine of not more than $5,000 or imprisonment for not more than 20 years, or both. It would appear therefrom that the sentence which Lueder received was within the limits of the statute under which he was charged, irrespective of any previous record.

In light of the objectives of the petitioner in this case, for whatever significance they may have, we draw attention to Sections 12–01–07, 12–06–10, 12–06–13, 12–06–14, 12–35–02(9), 12–46–17, N.D.C.C., in effect in the years 1964 and 1965.

"Crimes or public offenses are either felonies or misdemeanors. A felony is a crime which is or may be punishable with death or imprisonment in the penitentiary. Every other crime is a misdemeanor. *When a crime punishable by imprisonment in the penitentiary also is punishable by fine or imprisonment in a county jail, in the discretion of the court or jury, it is, except when otherwise specially declared by law to be a felony, a misde-meanor for all purposes after a judgment imposing a punishment other than imprisonment in the penitentiary."* (Emphasis added.) § 12–01–07, N.D.C.C.

"Except in cases where a different punishment is prescribed by law, every offense declared to be a felony is punishable by a fine of not more than one thousand dollars, or by imprisonment in the penitentiary for not less than one year nor more than five years, or by both such fine and imprisonment." § 12–06–10, N.D.C.C.

"Whenever any person under the age of twenty-one years is convicted of an offense punishable by imprisonment in the penitentiary, the court before which such conviction was had, in its discretion, may sentence the person so convicted to imprisonment in the county jail of the county in which such conviction was had or commit the person so convicted to the state training school as provided in this title." § 12–06–13, N.D.C.C.

"Except in cases where a different punishment is prescribed by law, every offense declared to be a misdemeanor is punishable by imprisonment in a county jail for not more than one year, or by a fine of not more than five hundred dollars, or by both such fine and imprisonment." § 12–06–14, N.D.C.C.

"Any person who:

.    .    .    .    .

9. Breaks into and enters at any time any building or any part of a building, booth, tent, railroad car, motor vehicle or trailer, vessel, or other structure or erection in which any property is kept, with intent to steal or to commit a felony,

is guilty of burglary and shall be punished by imprisonment in the penitentiary for not less than one year nor more than ten years." § 12–35–02(9), N.D.C.C.

"If any person who has been convicted of a felony and committed to the state training school shall be or become incorrigible and manifestly or persistently dangerous to the good order, government, and welfare of such school or the stu-

dents thereof, the board of administration must order such person returned and delivered to the sheriff of the county from which he was committed, and the proceedings against such person thereafter shall be resumed and continued as though no order or warrant of commitment to the state training school had been made." § 12–46–17, N.D.C.C.

Because the petitioner requests that the trial court's order denying his motion to vacate the judgment of sentence be reversed or, in the alternative, that the matter be remanded for an evidentiary hearing so that an adequate record may be formulated, we think it important to review the pertinent provisions of the Uniform Post-Conviction Procedure Act.

To qualify for relief, one must bring himself within the provisions of Section 29–32–01, N.D.C.C. It reads:

"1. Any person who has been convicted of, or sentenced for, a crime and who claims:

a. That the conviction or the sentence was in violation of the constitution, laws, or treaties of the United States or the constitution or laws of this state;

b. That the court was without jurisdiction to impose sentence;

c. That the sentence exceeds the maximum authorized by law;

d. That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

e. That his sentence has expired, that his probation, parole, or conditional release has been unlawfully revoked, or that he is otherwise unlawfully held in custody or other restraint; or

f. That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy;

may institute, without paying a filing fee, a proceeding under this chapter to secure relief." § 29–32–01(1), N.D.C.C.

It would appear that he is attempting to invoke parts a., d., and f. of subsection (1).

Sections 29–32–03 and 29–32–04, N.D.C.C., provide for the commencement of proceedings through a verified application and for the contents of the application.

The pertinent parts of those sections follow:

"A proceeding is commenced by filing an application verified by the applicant with the clerk of the court in which the conviction took place. An application may be filed at any time. *Facts within the personal knowledge of the applicant and the authenticity of all documents and exhibits included in or attached to the application must be sworn to affirmatively as true and correct. . . .*" (Emphasis added.) § 29–32–03, N.D.C.C.

"The application shall identify the proceedings in which the applicant was convicted, give the date of the entry of the judgment and sentence complained of, specifically set forth the grounds upon which the application is based, and clearly state the relief desired. *Facts within the personal knowledge of the applicant shall be set forth separately from other allegations of facts and shall be verified as provided in section 29–32–03. . . .*" (Emphasis added.) § 29–32–04, N.D.C.C.

Although petitioner in his application has not affirmatively sworn that the facts contained in the application are true and correct as required by Section 29–32–04, N.D.C.C., as he has signed the petition before a parole officer authorized to administer oaths who certifies that the petition was sworn and subscribed to before him, we shall consider that sufficient compliance, especially in light of the admonition in subsection (1) of Section 29–32–06, N.D.C.C., that the court in considering the application should take account of substance *regardless* of defects of form.

The pertinent parts of Section 29–32–06, N.D.C.C., read:

"1. Within thirty days after the docketing of the application, or within any further time the court may fix, the state shall respond by answer or by motion which may be supported by affidavits. . . . *In considering the application the court shall take account of substance regardless of defects of form.* . . . (Emphasis added.)

"2. When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post-conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for so doing. *The applicant shall be given an opportunity to reply to the proposed dismissal.* In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or direct that the proceedings otherwise continue. *Disposition on the pleadings and record is not proper if there exists a material issue of fact.* (Emphasis added.)

"3. The court may grant a motion by either party for summary disposition of the application when it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." § 29–32–06, N.D.C.C.

Notwithstanding that subsection (2) of Section 29–32–06, seems to require an evidentiary hearing when there is an issue of material fact, Section 29–32–07, N.D.C.C., seems to indicate from the use of the word "may" that a hearing may be held in the petitioner's absence.

"The application shall be heard in, and before any judge or his successor of, the court in which the conviction took place. A record of the proceedings shall be made and preserved. All rules and statutes applicable in civil proceedings including pre-trial and discovery procedures are available to the parties. *The court may receive proof by affidavits, depositions, oral testimony, or other evidence and may order the applicant brought before it for the hearing.* If the court finds in favor of the applicant, it shall enter an appropriate order with respect to the conviction or sentence in the former proceedings, and any supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper. The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented. This order is a final judgment." (Emphasis added.) § 29–32–07, N.D.C.C.

What kind of a hearing one may have in his absence is questionable, but on the other hand it is also questionable whether the legislature intended to require the committing court to put the State to the expense of transporting someone from a Federal penal institution in another state many miles away to this State for a hearing to determine whether a judgment and suspended sentence upon a conviction should be vacated.

▮ In an attempt to resolve the ambiguity or conflict arising from subsection (2) of Section 29–32–06, N.D.C.C., which states that disposition on the pleadings and record is not proper if there exists a material issue of fact and thus calls for a hearing, and Section 29–32–07, N.D.C.C., which seems to indicate by the use of the word "may" that a hearing may be held in the absence of the petitioner, we hold that to make such a hearing meaningful the trial court should consider appointing counsel to speak for or represent the petitioner at a hearing which is necessitated by the existence of an issue of a material fact, when the petitioner is indigent and is confined against his will in an institution which confinement prevents

his voluntary appearance at the hearing, notwithstanding that the petitioner has elected to proceed pro se.

With this background relating to the procedural aspects of this case and the pertinent provisions of our Post-Conviction Procedure Act, we shall consider the contentions of the petitioner. In considering the contentions raised in this appeal, we must take cognizance of the fact that our court has previously considered a request by this petitioner for relief. *State v. Lueder*, 242 N.W.2d 142 (N.D.1976).

In the petitioner's first appeal, our court analyzed the issues which could be considered in conjunction with the petition to the district court of Grand Forks County as follows:

"The defendant makes these claims, in addition to claims having no legal significance whatever, as to the Grand Forks County proceeding: (1) that the waiver of juvenile court jurisdiction in his case was made without a hearing and without the assistance of counsel; (2)´that his rights were violated by the failure of the State to provide him with counsel during interrogation; (3) that a confession of the Grand Forks County offense had been obtained from him in Ward County by promises that he would not be tried as an adult and would be sent to the Industrial School; (4) that he attempted suicide twice and suggested psychiatric evaluation and treatment and that these facts should have caused the court, on its own motion, to hold a hearing as to his competency; (5) that his parents retained counsel for him by order of the court; (6) that he had only fifteen minutes to consult with his attorney and was told that he would be sent to the State Hospital for psychiatric treatment instead of to prison; and (7) that publicity prevented a fair trial. . . ." *Id.* at 144.

After discussing each of those issues in detail, the court concluded that no error had been committed and, accordingly, denied post-conviction relief.

In discussing issue number (3), this court said:

"It may very well be that the defendant was told at the Ward County hearing that he would be sent to the Industrial School. He was sent there upon sentence following conviction on the Ward County charge, and while there was unmanageable and was returned to the Ward County court for further action. If he has any complaints on these matters, they should be directed to the Ward County district court, not the Grand Forks County district court. (The present record gives no justification for any complaint against the Ward County district court.)" *Id.* at 145–146.

It is likely that this language encouraged the petitioner to file his second application for post-conviction relief.

■ In considering this second application, issues which were considered and decided in the first appeal will not be considered further in this appeal.

■ Before we may consider the issues raised in the second application, we must consider the scope of our review on this appeal as well as the scope of the trial court's review on the application before it. In light of·the provision in Section 29–32–06(2), N.D.C.C., which asserts that disposition on the pleadings and the record is not proper if there exists a material issue of fact, we must review the record as it was presented to the trial court to determine whether a material issue of fact existed, inasmuch as the trial court, in effect, granted a summary judgment of dismissal of the petitioner's application. Because of that part of Section 29–32–07, N.D.C.C., which provides that all rules and statutes applicable in civil proceedings, including pretrial and discovery procedures, are available to the parties, Rule 56 of the North Dakota Rules of Civil Procedure relating to summary judgments and our decisions concerning that rule are applicable.

In his application to the trial court, the petitioner's assertions were denominated as three points, two of which included subparts. On appeal, the petitioner added two points and revised his subsections. Points II and V seem to be added on appeal.

"POINT II

"(A) THE PETITIONER DID NOT EFFECTIVELY NOR SATISFACTORILY 'WAIVE' HIS RIGHT TO COUNSEL BEFORE HE ENTERED HIS PLEA OF GUILTY IN DISTRICT COURT.

"(B) The absence of counsel cannot be considered harmless since the 'Information' charging the petitioner with the crime of burglary, and for which he was convicted, was defective under N.D.C.C. § 12–35–02, a situation with which the petitioner as a layman was scarcely competent to deal with and which is one of the many functions of an attorney."

"POINT V

THE COURT BELOW ERRED WHEN IT DENIED THE PETITIONER AN EVIDENTIARY HEARING."

The points asserted in the application to the trial court read:

"ARGUMENT: POINT I

THE PETITIONER WAS SUBJECTED TO ILLEGAL ARREST, DETENTION, AND COERCIVE INTERROGATION WHILE UNDER THE AUSPICES OF THE JUVENILE COURT. THE NET RESULT OF THESE PRACTICES WAS A COERCED CONFESSION, THE BASIS FOR THE JUVENILE COURT'S 'WAIVER OF JURISDICTION', AND THE PETITIONER'S SUBSEQUENT CONVICTION.

"(A) The interrogation of the petitioner without warning of his absolute constitutional right to remain silent, and his right to counsel, was patently erroneous once the investigation had begun to focus upon him as the prime suspect.

"(B) Assuming this Court sustains petitioner's position that the 'confession' proffered was the product of 'inherently coercive interrogation', the 'waiver of juvenile jurisdiction', therefore was error.

"POINT II

PETITIONER'S PLEA WAS A PRODUCT OF HIS COERCED CONFESSION, AND WAS THEREFORE, NEITHER VOLUNTARILY OR INTELLIGENTLY ENTERED.

"POINT III

"(A) Introduction.

PETITIONER WAS TWICE PLACED IN JEOPARDY IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

"(B) THE DOUBLE JEOPARDY CLAUSE PRECLUDED THE STATE FROM SUBJECTING THE PETITIONER TO TRIAL AND CONVICTION MORE THAN ONCE."

■ Because a determination of points I and II in the application to the trial court

requires the determination of facts surrounding the procurement of the so-called coerced confession; which was obtained prior to *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) outlining due process in juvenile proceedings, and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), outlining due process in adult criminal proceedings; and as neither of those decisions are retroactive, *State v. Lueder*, 242 N.W.2d 142 (N.D.1976), as to juveniles, and *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), we must determine the petitioner's rights under the pre-*Kent* and *Miranda* decisions.

As early as 1948, in *Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed.2d 224, the United States Supreme Court, in a five to four opinion, set aside a judgment of conviction of a fifteen-year-old boy charged with murder on the ground that his confession had been obtained under circumstances violative of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In that case it was uncontested that a fifteen-year-old boy had been arrested at midnight and questioned in relays by police until 5:00 a. m., when he confessed to the murder for which he was charged after having been shown alleged confessions of two of his friends.

The Court in *Haley*, after pointing out that the fifteen-year-old boy had no one to lean on, no friend at his side while the police worked in relays questioning him, no lawyer to protect him, and no counsel or friend was called during the critical hours of questioning, nor any effort made to secure a lawyer for him, said:

"The age of petitioner, the hours when he was grilled, the duration of his quizzing, the fact that he had no friend or counsel to advise him, the callous attitude of the police towards his rights combine to convince us that this was a confession wrung from a child by means which the law should not sanction. Neither man nor child can be allowed to stand con-

demned by methods which flout constitutional requirements of due process of law." *Id.* at 68 S.Ct. 304.

In response to the contention that the boy was advised of his constitutional rights before he signed the confession, and that, knowing them, he nevertheless confessed, the Court in *Haley* said that that assumes that a boy of fifteen without aid of counsel would have a full appreciation of that advice and that, on the facts of the record, he had a freedom of choice. The Court concluded that it could not indulge in those assumptions and that it could not give any weight to recitals which merely formalize constitutional requirements.

The Court in *Haley* concluded by saying: "Formulas of respect for constitutional safeguards cannot prevail over the facts of life which contradict them. They may not become a cloak for inquisitorial practices and make an empty form of the due process of law for which free men fought and died to obtain.

". . . The Fourteenth Amendment prohibits the police from using the private, secret custody of either man or child as a device for wringing confessions from them." *Id.* at 68 S.Ct. 304.

In *Haley* the confession was received in evidence, and it was the receipt of this confession, deemed not to be voluntary that required a reversal of the conviction. Lueder contends in the instant case that although the statement received from him was not used in a similar manner during a contested trial, it was used by the juvenile court as a basis for waiving juvenile jurisdiction and that as a result thereof he pled guilty. This is something over which a better record could be established through the taking of depositions or through the use of affidavits, and would seem to justify a remand to the trial court for such a purpose.

In the petitioner's 41-page petition, not including the six pages of table of contents and table of authorities, he has alleged many factual matters which we believe deserve a response from the State which could be made in the form of affidavits or depositions, but apparently were deemed unnecessary by the State under its view of the law. Some of these allegations, as set forth on pages 8–11 of Lueder's petition, are that after being arrested in Minot at approximately 5:05 a. m. on November 15, 1964, he was placed in a vacant cell in the city jail, among adults, with neither a mattress nor lighting; that he was not allowed to call his parents in Grand Forks nor were they informed of his whereabouts; that his "co-defendant" was questioned about the burglary, implicating Lueder in the burglary and in two armed robberies in Grand Forks; that the petitioner, who was 17 years old at the time, and was visibly fatigued after having driven from Grand Forks without rest, was not overly intelligent and showed signs of mental instability, was interrogated by two policemen and a policewoman; that he was not given the benefit of counsel or told that he had the right to remain silent, even though investigations of the Minot burglary and the Grand Forks robberies had focused upon him; that he was confronted with his codefendant's confession naming him as a participant in the Minot and Grand Forks crimes; that he was fingerprinted and forced to have his picture taken while wearing different colored coats and having his face covered by a handkerchief; that he was broken down by use of insinuations and threats of imprisonment in the penitentiary; that he was promised adjudication as a juvenile delinquent rather than as an adult defendant; and that, being harassed to the point of exhaustion and being frightened by the threat of adult confinement, he signed a statement at 1:35 p. m. on the same date as his arrest implicating himself in the Minot burglary and the Grand Forks robberies.

Since the facts as alleged, and presently undisputed, by the petitioner are similar in many respects to the facts that were said to be undisputed in *Haley,* and as the United States Supreme Court in *Haley* held those facts as a justification for reversal, we think it important that this case be remand-

ed for a further elucidation of the facts surrounding the petitioner's arrest, questioning and statement, and the waiver of juvenile court jurisdiction, as they may now be ascertained and made a matter of record, and so that the trial court may again, with the fuller state of facts, determine whether the petitioner is entitled to any relief.

In this connection, we would particularly draw the trial court's attention to the law which we have earlier referred to herein, Section 29-32-06(2), N.D.C.C., which in essence provides that a disposition on the pleadings and record is not proper if there exists a material issue of fact.

In light of what we have said here, we think that upon remand the trial court should consider both the majority and dissenting opinion in *Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), involving a motion to vacate a Federal sentence under 28 U.S.C., § 2255.

We believe that what we have said thus far covers points I and II of the petition filed with the trial court, thus we shall now consider point III of that petition. That point is that the petitioner was twice placed in jeopardy in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution.

The petitioner's major argument in connection with this issue seems to be that because the trial court, in conjunction with the burglary charged in Ward County, ordered him committed to the State Industrial School until he became 21 years of age, and thereafter, the superintendent of the Industrial School returned him to the sheriff of Ward County pursuant to Section 12-46-17, N.D.C.C., because of the petitioner's conduct and attempts to escape from the Industrial School, and the trial court thereafter sentenced him to six months in the county jail, which sentence was ultimately suspended, that he has been twice placed in jeopardy. We do not agree. Section 12-46-17, N.D.C.C., in effect at the time of petitioner's transfer from the Industrial School to the county sheriff, follows:

"If any person who has been convicted of a felony and committed to the state training school shall be or become incorrigible and manifestly or persistently dangerous to the good order, government, and welfare of such school or the students thereof, the board of administration must order such person returned and delivered to the sheriff of the county from which he was committed, and the proceedings against such person thereafter shall be resumed and continued as though no order or warrant of commitment to the state training school had been made."

Although a formal hearing may not have been held, as such a hearing was not mandated by the juvenile court statutes then existing, it is possible and highly probable that ample evidence existed for a return of the petitioner to the county for further disposition by the trial court.[1] Notwithstanding the lack of a statute specifically

---

1.          "December 28, 1964

"Honorable Roy A. Ilvedson
District Court Chambers
Fifth Judicial District
Minot, North Dakota
               "Re: LUEDER, Robert Mark
"Dear Judge Ilvedson:
"You no doubt are aware that Robert Lueder escaped from our institution on Christmas Eve and was later apprehended between Bismarck and Mandan on the railroad bridge. This is the third escape attempt since Robert's sentence to our institution on November 21.
"We have been in weekly consultation with Doctor Samuelson from the State Psychiatric Clinic concerning Robert's mental problems

and his failure to make a satisfactory adjustment in our institution. You will recall from my letter of December 9 that our initial goal was to stabilize the boy's behavior so that we could work him into the general institution program. We have been unable to do this because of Robert's three run away attempts and his threats to do physical harm to himself as well as others. The only recourse we have is to either keep him in security or return him to district court for further action. Our decision at this time is to return him to district court in accordance with provisions contained in Section 12-46-17 of the North Dakota State Code. Our institution does not have the necessary safeguards to contain this young man for any appreciable length of time. In addition, his

requiring a hearing by the board of administration (now director of institutions), in light of Sections 12–46–09, 12–46–10, 12–46–10.1, N.D.C.C., records should be obtainable as to what was required by the Rules and what actually transpired. On remand of this case, an attempt to obtain this evidence should be made and if such evidence is obtainable, it should be preserved through depositions and affidavits, for such value as it may have in aiding the trial court in its determination of whether those facts justify petitioner's request for relief.

Petitioner asserts that he was tried twice and punished twice for the same offense. We do not agree. Actually he was convicted of the burglary charge in Ward County on his plea of guilty and was committed to the Industrial School. When his conduct forced the authorities there to return him to the trial court for sentencing under criminal procedure affecting adults, he was merely sentenced pursuant thereto. It is conceivable that he could have been prosecuted for offenses which he committed in conjunction with the escapes from the Industrial School, but he was not.

■ The petitioner asserts that Section 12–46–17, N.D.C.C., is unconstitutional. He cites no decisions of the United States Supreme Court holding similar statutes unconstitutional and we know of none.

Among the many decisions to which the petitioner has made reference, are those of *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), and *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d

199 (1957). In conjunction with these three opinions, the petitioner makes the following statement:

"The special significance of *Jorn, Downum* and *Green* is that in those cases the trier of facts failed to arrive at a verdict as to one or all of the charged crimes. Since, however, the double jeopardy clause forbids multiple trials for the same offense, the Supreme Court of the United States held that the attachment of jeopardy during the initial trials precluded subsequent prosecutions in connection with the same offenses."

As indicated, the petitioner speaks of the prohibition against multiple trials. In the instant case, there has been only one trial. There has also been only one sentencing. The first action on the part of the trial court was a commitment, in effect, for care, treatment, and training, and the second was a sentence. This is not a case where the juvenile was first adjudicated a criminal in juvenile court and then transferred to criminal court for trial again and sentencing. The case is thus distinguishable from *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). *See generally State v. Berger*, 235 N.W.2d 254 (N.D.1975).

We believe that this disposes of the issues involved in the three points argued by the petitioner in his motion to the trial court. Before we conclude this opinion, we think it important to consider briefly point II and point V in the brief filed with our court, which are points that the petitioner has added and thus were not considered as separate issues by the trial court.

Point II on appeal is that:

"I am sorry that we were unable to make any great headway with this young man. His behavior pattern is too well established to make any significant changes in our setting. If I can be of further help to you concerning this boy, please do not hesitate to give me a call.

    "Sincerely yours,
    /s/ Cameron L. Clemens
    Cameron L. Clemens, ACSW
    Superintendent"
(Emphasis added.)

behavior is such that it endangers the health and welfare of other students and the institution program.
"During Robert's last escape from our school he broke into a Mandan garage and held the proprietor at bay with a rifle. Because Robert is potentially dangerous we feel a more structured, secure institutional setting is required.
"I am recommending to the Board of Administration that an order should be issued to have Robert Lueder returned to Minot to appear before you once again in district court. I expect you will be informed shortly when he is returned to Minot.

"THE PETITIONER DID NOT EFFECTIVELY NOR SATISFACTORILY 'WAIVE' HIS RIGHT TO COUNSEL BEFORE HE ENTERED HIS PLEA OF GUILTY IN DISTRICT COURT."

■ As this point was not specifically set forth apart from other arguments as a major point in the application to the trial court, we will not consider that point in this appeal. It is our view that the State should have an opportunity to respond to that point by submitting evidence by affidavit or deposition and by argument.

Point number V on appeal which is a point not covered specifically and separately in the petition filed with the trial court, is:

"THE COURT BELOW ERRED WHEN IT DENIED THE PETITIONER AN EVIDENTIARY HEARING."

It is our view that the trial court, upon remand of this case, after permitting both the State and the petitioner to submit further evidence relative to the issues discussed herein and after permitting both the State and the Petitioner to file supplementary briefs, should then decide not only point V, but the other points which we have specifically indicated for similar treatment. What we have said earlier herein about the possible need for appointment of counsel should be kept in mind in conjunction with the hearing when material issues of fact are found to exist.

For the reasons stated, the order of the district court of Ward County which denied the petition is vacated to the extent described herein and for the purposes set forth herein. This case is, accordingly, remanded to the trial court for proceedings consistent with this opinion.

SAND, PAULSON, PEDERSON and VOGEL, JJ., concur.

SAND, Justice (concurring specially).

Even though I agree with and signed the opinion of Chief Justice Erickstad, nevertheless, because of the time element involved here, over ten years since the conviction from which no appeal has been taken, I am compelled to make a few additional observations.

Under the Uniform Post-Conviction Act, § 29–32–03, NDCC, "an application may be filed at any time." This provision seems to allow the filing of an application without regard to the time that may have elapsed since the conviction.

It is a known fact that time dims, if not completely obscures, memories and, in addition, death may make certain testimony unavailable.

Where the disposition of the issue rests upon oral testimony as distinguished from evidence in the record, the law should require that such issues (applications) be raised within a reasonable period of time or require the giving of compelling reasons why the question could not have been raised earlier.

I further believe that the burden of establishing the facts upon which relief is requested rests upon the petitioner, and mere unsupported, self-serving sworn statements or allegations do not meet this burden.

The trier of fact has the responsibility to determine the facts in cases such as the one under consideration in the same manner as he is required to do in other cases, which permits him, if warranted, to discount unsupported testimony of the petitioner even though it is in written form.

If the petition, which rests upon oral testimony, is permitted to be filed at any time regardless of the amount of time that has transpired since the conviction, the State may very well be placed in a position where it may not be able to refute any of the allegations set forth in the petition.

I raise this caveat with the hope that the Legislature will make appropriate amendments and, if not, that the courts will impose a rule of reasonableness based on the theory of laches.

VOGEL, J., concurs.