[Crim. Nos. 11481, 11514.   In Bank.   Dec. 13, 1967.]

In re JACK R. HARRIS on Habeas Corpus.

Jack R. Harris, in pro. per., and Robert F. O'Neal, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

TRAYNOR, C. J.—In 1940 when he was 14 years old Jack R. Harris was charged with murder in the San Luis Obispo Justice Court. The court suspended proceedings and certified the case to the juvenile court. (Welf. & Inst. Code, § 700,

subd. (m).)[1] After a hearing at which the juvenile court took evidence and examined Harris, it found him an "unfit subject" for juvenile proceedings and remanded him to the justice court. (Welf. & Inst. Code, § 734.)[2] After a preliminary examination the justice court held him to answer for murder. Harris was not represented by counsel in either the juvenile court or the justice court.[3]

The district attorney filed an information in the superior court charging Harris with murder, and that court appointed counsel for him. Thereafter he pleaded guilty. The criminal proceedings were suspended, and Harris was hospitalized for six years as a sexual psychopath. In 1946, the superior court sentenced him to state prison for life, but failed to fix the degree of the crime as required by Penal Code, section 1192.

In these proceedings Harris attacks the judgment of conviction by two petitions for a writ of habeas corpus. He filed the second petition to invoke the decision of the United States Supreme Court in *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], which was decided after an order to show cause had been issued on the first petition.

Petitioner contends that his constitutional right to counsel was violated in the juvenile court proceedings.

In *Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], the Supreme Court held that a juvenile court's direction that a minor be held for trial as an adult must be based on a hearing that conforms to "the basic requirements of due process and fairness, . . ." (383 U.S. at p. 553 [16 L.Ed.2d at p. 93].) Characterizing that adjudication as a " 'critically important' " proceeding (383 U.S. at p. 560 [16 L.Ed.2d at p. 97]), the court saw "no place in our system of law for reaching a result of such tremendous consequences . . . without effective assistance of counsel . . ." (383 U.S. at p. 554 [16 L.Ed.2d at p. 93]).

The court expressly based its decision in *Kent* on a statute

---

[1]Section references herein are to statutes applicable in 1940. The current Juvenile Court Act was enacted in 1961.

[2]Section 734 provided: "If upon the hearing . . . the court determines that any person alleged to come within subdivision (m) of section 700 is not a fit and proper subject to be dealt with under the provisions of this chapter, the court may dismiss the petition, and direct that the person be prosecuted under the general law."

[3]Petitioner's right to counsel at the preliminary examination (*People* v. *Harris* (1934) 219 Cal. 727 [28 P.2d 906]) was waived by his failure to raise the objection at trial. (*People* v. *Harris* (Crim. 11554) *ante,* p. 866 [64 Cal.Rptr. 313, 434 P.2d 609]; *In re Wells* (Crim. 11555) *ante,* p. 873 [64 Cal.Rptr. 317, 434 P.2d 613].)

applicable to the District of Columbia. (383 U.S. at p. 556 [16 L.Ed.2d at p. 94].) The statute, however, was "read in the context of constitutional principles relating to due process and the assistance of counsel." (383 U.S. at p. 557 [16 L.Ed.2d at p. 95].) Moreover, the court in *In re Gault, supra,* 387 U.S. 1, leaves little doubt that *Kent* is now of constitutional dimension.[4] *Gault* holds, *inter alia,* that the due process clause of the Fourteenth Amendment requires that a minor be represented by counsel—retained or appointed—in proceedings to determine delinquency that may result in commitment to an institution. (387 U.S. at p. 41 [18 L.Ed.2d at p. 554].) The court noted that "Just as in *Kent* . . . we indicated . . . that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, . . ." (387 U.S. at p. 36 [18 L.Ed.2d at p. 550].)

There is no indication that Harris was advised of his right to counsel in the juvenile court, and counsel was not appointed until he appeared in the superior court. We hold, however, that *Kent* does not apply to cases in which the judgment became final prior to May 15, 1967, the date of the decision in *Gault.*[5]

Retroactive application of *Kent* would "seriously disrupt" the administration of justice. (*Johnson* v. *New Jersey* (1966) 384 U.S. 719, 731 [16 L.Ed.2d 882, 891, 86 S.Ct. 1772].) Judgments of conviction entered following waiver of juvenile court jurisdiction and final before *Gault* was decided " 'threaten to be of significant quantity.' " (*People* v. *Feggans* (1967) *ante,* pp. 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) Moreover, many of the defendants convicted after remand for criminal proceedings have become adults and are no longer subject to juvenile court jurisdiction. If, upon collateral attack, a court determined that the waiver of juvenile court jurisdiction was proper when made, the judgment would stand. If the juvenile court should have retained jurisdiction, however, the judgment would be vacated and the defendant, by reason of age, would no longer be triable in the juvenile court. Although remand to the juvenile court would be the proper remedy if the error were still subject to timely and effective correction on direct attack (see *Kent* at p. 565

---

[4] Accord, *State* v. *Yoss* (Ohio Ct.App. 1967) 1 Crim.L.Rep. 2039; contra, *State* v. *Acuna* (N.M. 1967) 1 Crim.L.Rep. 2061.

[5] Accord, *State* v. *Hance* (Md.Ct.Spec.App. 1967) 2 Crim.L.Rep. 2014; *Smith* v. *Commonwealth* (Ky.Ct App. 1967) 412 S.W.2d 256.

[16 L.Ed.2d at pp. 99-100]), we reject the invitation to compound the speculation and the risks it would entail by retroactive application on collateral attack (see *In re McInturff* (1951) 37 Cal.2d 876, 881 [236 P.2d 574], and cases collected therein).

Moreover, the waiver of juvenile court jurisdiction has always been subject to review in subsequent proceedings in which the defendant was represented by counsel. (*People* v. *Yeager* (1961) 55 Cal.2d 374, 389 [10 Cal.Rptr. 829, 359 P.2d 261]; *People* v. *Dotson* (1956) 46 Cal.2d 891, 896 [299 P.2d 875]; *Knight* v. *Superior Court* (1951) 102 Cal.App.2d 211, 214-215 [227 P.2d 62]; *People* v. *Renteria* (1943) 60 Cal.App. 2d 463, 470-471 [141 P.2d 37].) Only in those cases in which he could have induced the juvenile court to exercise its discretion differently might counsel have affected the result. Finally, since a defendant has always had the right to counsel in the criminal proceedings, denials of that right in the juvenile courts have not resulted in convicting the innocent.

Penal Code section 1192 provides that when a defendant pleads guilty, "the court must, before passing sentence, determine the degree" of the crime. Before 1949 if the court failed to take evidence on the degree of the crime (see *In re James* (1952) 38 Cal.2d 302, 312 [240 P.2d 596]) and to make the required determination, its judgment and sentence were erroneous (*People* v. *Verdier* (1950) 96 Cal.App.2d 29 [214 P.2d 433]). The error could be corrected at any time by remanding the case to the trial court to make the required determination. (*People* v. *Hammond* (1938) 26 Cal.App.2d 145 [78 P.2d 1172] [determination made 20 years after judgment].) In 1949, however, section 1192 was amended to provide that if the court fails to determine the degree, "the crime of which the defendant is guilty, shall be deemed to be of the lesser degree." (See also Pen. Code, §§ 182, 1157.)

█ In the present case, the Attorney General contends that by sentencing petitioner to prison for life instead of from five years to life (see Pen. Code, § 190) or simply for the term prescribed by law, the trial court determined that the murder was of the first degree. He urges that the sentence must be interpreted in the light of the evidence that the murder was committed during a sexual assault against the victim, which evidence, he asserts, establishes first degree murder as a matter of law. In 1940, however, the only sex crimes that would support a conviction of first degree felony murder were rape and attempted rape. (Pen. Code, § 189.) Although six

years before the judgment was entered the same trial judge had committed petitioner to a state hospital as a sexual psychopath, there is nothing in the record to indicate that the trial court at either time considered whether petitioner had the specific intent necessary to be guilty of first degree felony murder or to be guilty of a deliberate and premeditated murder. (See *People* v. *Craig* (1957) 49 Cal.2d 313 [316 P.2d 947]; *People* v. *Anderson* (1965) 63 Cal.2d 351 [46 Cal.Rptr. 763, 406 P.2d 43].) Under these circumstances we cannot infer the specific finding of the degree of the crime required by section 1192 from the ambiguous imposition of a life sentence.

Although the judgment was entered before the 1949 amendment to section 1192, we believe that amendment is nevertheless applicable. It prescribes the rule for the correction of a violation of the statutory duty at the time of sentencing. The amendment therefore speaks not only to the time of the error, but also to the time of its correction. It is mandatory in terms, and the fact that the error was committed before 1949 confers no discretion to depart from the statutory mandate. No interest of petitioner is prejudiced by denying him a hearing to fix the degree if the judgment is deemed to be a conviction of second degree murder. By amending section 1192 the Legislature also determined that the state's interest in securing a conviction of a higher degree is outweighed by the administrative convenience of terminating litigation by imposing a lesser sentence when the trial court fails to determine the degree.[6] It would be anomalous if the remedy provided in 1949 to correct a trial court's error were held applicable only to errors occurring after the remedy was adopted, for it is with respect to earlier cases that a remedial device free from the difficulties of taking evidence and reaching decisions about events long past is most needed.

We have examined the other contentions raised by petitioner and find them without merit.

The Superior Court of the County of San Luis Obispo is directed to correct its judgment in the case of Peo-

---

[6]Penal Code section 1157 reflects a similar policy. That section provides that "Whenever a defendant is convicted of a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime of which the defendant is guilty, shall be deemed to be of the lesser degree." For an application of the statute to a jury trial, see *People* v. *Fernandez* (1963) 222 Cal.App.2d 760, 769-770 [35 Cal.Rptr. 370].

ple v. Harris entered on June 24, 1946, to provide that Jack R. Harris is found guilty of murder of the second degree and sentenced to prison for the term prescribed by law for that offense. The orders to show cause are discharged and the petitions are denied.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Petitioner's application for rehearing was denied January 24, 1968.