Alexander STANLEY, Petitioner,

v.

C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 68–C–34–D.

United States District Court
W. D. Virginia,
Danville Division.

Oct. 9, 1968.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before this court on a petition for a writ of habeas corpus, filed *in forma pauperis* by Alexander Stanley, a state prisoner, pursuant to 28 U.S.C. § 2241. This case was originally filed in the United States District Court for the Eastern District of Virginia and was transferred to this court on June 18, 1968.

Petitioner is currently serving a sentence of ten years pursuant to a judgment of the Corporation Court of the City of Danville on November 17, 1958, wherein he was convicted for the crime of larceny. An additional ten years sentence was imposed for the crime of attempted robbery. Both convictions resulted after the petitioner, represented by court appointed counsel, entered pleas of guilty to the two charges.

A plenary hearing was held in the Corporation Court of Danville on September 28, 1967, as a result of a petition for a writ of habeas corpus which petitioner had filed in the state courts. Petitioner was represented by court appointed counsel at this hearing. The Circuit Court denied the writ and dismissed the petition by an order dated October 20, 1967, which was accompanied

by a memorandum opinion. An appeal was taken to the Virginia Supreme Court of Appeals and on March 6, 1968, the writ of error was denied and the petition for a writ of habeas corpus refused. As a result, we think that the petition is properly before this court in compliance with 28 U.S.C. § 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Petitioner presents two claims to this court: that he was denied effective assistance of counsel at trial and that the petitioner had no counsel to represent him at a *waiver* hearing held in the Juvenile and Domestic Relations Court of the City of Danville.

The pertinent facts are these. Petitioner was fifteen years of age when he was taken into custody pursuant to a petition issued by the Juvenile and Domestic Relations Court of the City of Danville on October 16, 1958. The petitioner was charged with larceny, larceny from the person and attempted robbery. A probation officer was appointed guardian ad litem to represent the petitioner at the hearing on the petition. A prehearing report was completed on October 22, 1958 and on October 30, 1958, as a result of the hearing, the petitioner's case was certified over to the Corporation Court of Danville. The grand jury, on November 3, 1958, indicted the petitioner for the crimes of larceny from the person and attempted robbery. The court on this same day, November 3, 1958, appointed counsel to defend the petitioner. On November 17, 1958, the petitioner after consultation with his attorney, entered pleas of guilty to both charges, and after the court had heard the evidence, the petitioner was sentenced to ten years confinement in the Virginia State Penitentiary on each charge, the sentences to run consecutively. The petitioner was released from the Virginia State Penitentiary on parole on October 28, 1963, but was subsequently returned to prison for violation of parole on March 30, 1967.

█ █ Petitioner's first claim is that he was denied effective assistance of counsel. We find no merit in this claim. Petitioner's counsel testified that he talked to the police authorities, the Juvenile Court authorities, and the Commonwealth's Attorney; examined the various records; and talked to the petitioner on three occasions in his investigation of the case. He further testified that the petitioner indicated that he was involved in the crimes, and based on all of the information counsel advised a plea of guilty. The petitioner on the other hand testified that no investigation was made, but he admits that he has no knowledge other than if an investigation had been made the case would have resulted differently. Petitioner does not allege that his pleas of guilty were not voluntary or that he did not understand the nature of the pleas. In fact the petitioner admits a discussion in which the various advantages and disadvanages of a trial by jury or without a jury were discussed. It is well settled that the petitioner must prove by a preponderance of the evidence that a constitutional right has been violated before he may be granted relief on a habeas corpus petition. The petitioner cannot bear this burden when his allegations, supported only by his testimony are clearly contradicted by testimony to the contrary. Redd v. Peyton, 270 F.Supp. 757 (W.D. Va.1967). We think that petitioner has clearly failed to carry this burden and thus we find no basis for relief on the claim.

Petitioner's second claim is that he was not represented by counsel at the hearing held by the Juvenile and Domestic Relations Court which certified his case over to the Corporation Court of the City of Danville for trial as an adult. There is no dispute that the petitioner did not have the aid of counsel, but rather a probation officer assigned as guardian ad litem, at the Juvenile proceedings. The hearing held at the Juvenile and Domestic Relations Court is commonly called a *waiver* hearing.

The United States Supreme Court in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) held *inter alia* that

the Due Process Clause of the Fourteenth Amendment requires that the right to counsel be guaranteed to juveniles in "proceedings by which a determination is made as to whether a juvenile is a "delinquent" as a result of alleged misconduct on his part, with the consequence that he may be committed to a state institution." 387 U.S. at 13, 87 S.Ct. at 1436. The Supreme Court was careful to point out that "we do not even consider the entire process relating to juvenile 'delinquents.' For example, we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process. * * * We consider only the problems presented to us by this case." 387 U.S. at 13, 87 S.Ct. at 1436. Clearly, by its express limitations, the *Gault* opinion is not applicable to a *waiver* hearing in which no "determination is made as to whether a juvenile is a 'delinquent' * * * with the consequence that he may be committed to a state institution." See Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874 (1967). There was no such determination made in the present case.

■■ The court finds no denial of petitioner's constitutional right to due process. The Juvenile and Domestic Relations Court gave petitioner a full and fair hearing before waiving jurisdiction and certifying his case to the Corporation Court. The *waiver* hearing was never intended to be and should not be treated as an adversary proceeding. The Juvenile court in such a hearing acts *in loco parentis* to safeguard the best interest of the juvenile, when possible, in a procedure designed to alleviate the sometimes harsh retribution of the adult criminal correction system. Furthermore, a guardian ad litem was appointed to represent petitioner at the *waiver* hearing. In *Gault* the United States Supreme Court recognized that:

> From the inception of the juvenile court system, wide differences have been tolerated—indeed insisted upon—between the procedural rights accorded to adults and those of juveniles.

In practically all jurisdictions, there are rights granted to adults which are withheld from juveniles. 387 U.S. at 14, 87 S.Ct. at 1436.

The *waiver* hearing was not to determine petitioner's guilt or innocence—it was only to provide a basis for determining jurisdiction. Petitioner's guilt and sentence were not determined until later in a trial in which he received all his constitutional safeguards including effective representation by counsel.

■ Some similarity is noted between a *waiver* hearing and a preliminary hearing. Both are designed to determine if a defendant will be held for trial by a petit jury. Neither hearing is to determine the guilt or innocence of the defendant. There is no constitutional guarantee of counsel in a preliminary hearing, and there should be no such guarantee in a *waiver* hearing. See Fowler v. Peyton, 266 F.Supp. 252 (W.D. Va.1967).

In Black v. United States, 122 U.S. App.D.C. 393, 355 F.2d 104 (1965) the Court of Appeals in interpreting the Juvenile Court Act of the Code of the District of Columbia held that a *waiver* hearing is a "critically important" stage in the adjudicative process and that under the law of the District of Columbia a juvenile is entitled to counsel at such a hearing. *Black* was cited with approval by the United States Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) where the Supreme Court held that a juvenile court's decision to waive jurisdiction so as to allow the juvenile defendant to be tried as an adult must be based on a hearing that conforms to "the basic requirements of due process and fairness." 383 U.S. at 553, 86 S.Ct. at 1053. However, the decisions in *Black* and in *Kent* were not intended as pronouncements of constitutional guarantees applicable to the citizens of the United States. Rather the decisions were made on the narrow ground that the federal courts have authority to interpret the statutes of the District of Columbia and supervise the administration of criminal

justice therein.[1] The Supreme Court in *Kent* clearly delineated the narrow limits of its decision by stating:

> [We refuse] to accept the invitation to rule that constitutional guarantees which would be applicable to adults charged with the serious offenses for which *Kent* was tried must be applied in juvenile court proceedings concerned with allegations of law violation. The Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia Circuit provide an adequate basis for decision of this case, and we go no further. Kent v. United States, 383 U.S. at 556, 86 S.Ct. at 1054.

Thus, this court must conclude that *Black* and *Kent* are not applicable in the case at bar.

■ Even if *Gault* were extended to guarantee counsel to a juvenile at earlier stages of the juvenile-state relationship, the court feels that such an extention should not be retroactive. The United States Constitution neither requires nor prohibits retroactivity, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) and the courts may in the interest of justice make a decision prospective where the exigencies of the situation require such an application. Johnson v. State of New Jersey, 384 U.S. 719, 726, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966). In Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) the Supreme Court set forth the following criteria as guidelines to determine whether a newly announced constitutional standard should be applied prospectively only: (A) the purpose to be served by the new standard (B) the extent of the reliance by law enforcement authorities on the old standard, and (C) the effect on the administration of justice of a retroactive application of the new standards.

In *Stovall*, supra, the Supreme Court held that the new rules in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), requiring the exclusion of identification evidence which has been tainted by exhibiting the accused to witnesses in the absence of counsel should be given prospective application only. The court in that case recognized that the confrontation of witnesses was a "critical stage" and that "The presence of counsel will significantly promote fairness at the confrontation and a full hearing at trial on the issue of identification." Stovall, 388 U.S. at 298, 87 S.Ct. at 1971. Counsel at a *waiver* hearing would have the same purpose: that of promoting full and fair hearings as pointed out in Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874, 878 (1967) which was decided on similar facts to the present case. However, the court in *Stovall*, in deciding to apply the rules of *Wade* and *Gilbert* prospectively, emphasized the fact "that, unlike cases in which counsel is absent at trial or on appeal, it may confidently be assumed that confrontations for identification can be and often have been conducted in the absence of counsel with scrupulous fairness and without prejudice to the accused at trial." 388 U.S. at 299, 87 S.Ct. at 1971. The same is true of *waiver* hearings which have generally "been conducted in the absence of counsel with scrupulous fairness and without prejudice * *," being designed to guard the juvenile's best interest. Cradle v. Peyton, 156 S.E. 2d at 878.

Applying the second criterion of *Stovall*, we do not think it necessary to comment at length upon the extent of reliance by law enforcement authorities on the old standards. The court in *Gault* recognized the widespread acceptance of *"parens patriaë"* justice for juveniles.

> The Juvenile Court movement began in this country at the end of the last century. From the juvenile court statute adopted in Illinois in 1899, the system has spread to every State in the Union, the District of Columbia, and Puerto Rico. The constitution-

---

1. See also Washington v. Clemmer, 119 U.S.App.D.C. 216, 339 F.2d 715 (1964).

ality of juvenile court laws has been sustained in over 40 jurisdictions against a variety of attacks. In re Gault, 387 U.S. 1, 14, 87 S.Ct. 1428, 1437 (1967).

Turning now to the last criterion, we believe that the retroactive application of a constitutional standard interpreted to require counsel at a *waiver* hearing would have a serious disruptive effect upon the administration of justice. In In re Harris, 67 Cal.2d 876, 64 Cal.Rptr. 319, 434 P.2d 615 (1967) the Supreme Court of California held that such a rule should not be applied retroactively:

> Retroactive application of *Kent* would 'seriously disrupt' the administration of justice. * * * Judgments of conviction entered following waiver of juvenile court jurisdiction and final before *Gault* was decided 'threaten to be of significant quantity.' * * * Moreover, many of the defendants convicted after remand for criminal proceedings have become adults and are no longer subject to juvenile court jurisdiction. If, upon collateral attack, a court determined that the waiver of juvenile court jurisdiction was proper when made, the judgment would stand. If the juvenile court should have retained jurisdiction, however, the judgment would be vacated and the defendant, by reason of age, would no longer be triable in the juvenile court. Although remand to the juvenile court would be the proper remedy if the error were still subject to timely and effective correction on direct attack. (See *Kent*, at p. 565 of 383 U.S., 86 S.Ct. 1045), we reject the invitation to compound the speculation and the risks it would entail by retroactive application on collateral attack * * *. In re

Harris, 67 Cal.2d 876, 64 Cal.Rptr. 319, 320, 434 P.2d 615, 617 (1967).

 Thus, this court holds that the *Gault* principles should not be extended to require counsel at waiver proceedings when the juvenile has been certified over to the Corporation Court to be tried as an adult and there afforded the assistance of able and competent counsel, and even if there should be such an extension, this court will not hold it to be retroactive.[2]

It is therefore accordingly adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the writ denied.

A certified copy of this opinion and judgment is to be sent to the petitioner and to the respondent.

2. See: In re Harris, 67 Cal.2d 876, 64 Cal.Rptr. 319, 434 P.2d 615 (1967); State v. Hance, 2 Md.App. 162, 233 A.2d 326 (1967); Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874 (1967); Smith v. Commonwealth, 412 S.W.2d 256 (Ky.Ct. App.1967), cert. denied 389 U.S. 873, 88 S.Ct. 162, 19 L.Ed.2d 155 (1967).

But see: Application of Billie, 103 Ariz. 16, 436 P.2d 130 (1968); Steinhauer v. State, 206 So.2d 25 (D.C.Fla. 1968); Marsden v. Commonwealth, 352 Mass. 564, 227 N.E.2d 1 (1967); State ex rel. LaFollette v. Circuit Court of Brown County, 37 Wis.2d 329, 155 N.W. 2d 141 (1967).