74 N.J. 62 (1977)
376 A.2d 1169
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROBERT MARK LUEDER, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued March 22, 1977.
Decided July 22, 1977.
*66 Mr. Daniel Louis Grossman, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. James I. Peck IV argued the cause for respondent (Mr. Stanley C. Van Ness, Public Defender for New Jersey, attorney).
The opinion of the court was delivered by CONFORD, P.J.A.D., Temporarily Assigned.
Defendant was convicted of armed robbery of a Camden storekeeper in *67 1970.[1] A pre-trial motion by defendant for exclusion at the trial of the record of his 1965 conviction in North Dakota for armed robbery to affect the credibility of the defendant was denied, the prosecutor indicating he intended to adduce the conviction should defendant testify.[2] Defendant consequently chose, apparently for tactical reasons, to adduce the fact of the prior conviction on his own case.[3] On appeal to the Appellate Division defendant contended, for the first time, that the compelled introduction of his North Dakota conviction at the trial was error, because, prior to his plea of guilty, the North Dakota juvenile court had waived its jurisdiction over him to permit his prosecution as an adult without holding a hearing or providing him with counsel in relation to the matter of such waiver. Defendant asserted that a subsequent decision of the United States Supreme Court, Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), established the invalidity of a waiver procedure by a juvenile court conducted without providing counsel for the juvenile.
The Appellate Division accepted the foregoing contention and reversed the conviction. It held Kent retroactive to invalidate the prior North Dakota conviction, and thereby available to taint the current conviction, in which the prior conviction was used to impeach defendant's credibility, because the trial thereof "took place after November 13, 1967, the date of the decision in Burgett v. Texas, 389 U.S. 109, *68 114, 88 S.Ct. 258, 19 L.Ed. 319 (1967)." The court also cited United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed. 592 (1972), and State v. Koch, 118 N.J. Super. 421 (App. Div. 1972).[4] We granted certification. 70 N.J. 150 (1976). Pending the proceedings in this Court, the North Dakota Supreme Court rejected a motion brought by defendant to invalidate the 1965 armed robbery conviction, holding that Kent had no retroactive effect on the earlier juvenile court waiver of jurisdiction in defendant's 1965 prosecution and that the statute then in effect required no hearing in such waiver proceedings. State v. Lueder, 242 N.W.2d 142 (1976).

I
Although there has been a substantial spate of litigation in state and federal courts over the true significance of Kent, particularly in the light of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), decided the year after Kent, and as to the retroactivity of Kent, or Kent-Gault, in respect of the rights of uncounselled juveniles in juvenile court waiver proceedings, see infra, the present case is unusual in that it is one of the rare cases in which the issue has arisen in the collateral context of the use *69 of the prior conviction to impeach the credibility of the defendant in a subsequent criminal proceeding or enhance his punishment therein.[5] In all the reported cases cited to or found by us, except the two cited in note 5, the retroactivity question arose in proceedings to set aside the original conviction, either on direct appeal therefrom or in post-conviction proceedings, state or federal.[6] An additional layer of complexity encrusted on the instant retroactivity problem is that the current prosecution is in a jurisdiction other than that wherein the impugned juvenile proceedings and adult conviction took place.
It will be seen that any attempt faithfully to apply the principles of retroactivity as to newly declared rights in criminal proceedings enunciated both by the United States Supreme Court and this Court must, in part at least, give special consideration to the difference between the context in which the issue arises here and that in which it comes up in most of the reported cases to be discussed.

II
The first-stage branch of the retroactivity issue involves the question of the putative validity of defendant's prior conviction in North Dakota, where it was rendered, in the light of the subsequent decisions in Kent-Gault. We are at this stage unconcerned with a New Jersey retroactivity question, not merely because New Jersey required a juvenile waiver hearing, with counsel for the juvenile, even prior *70 to Kent,[7]State v. Tuddles, 38 N.J. 565, 572-573 (1962); State v. Van Buren, 29 N.J. 548, 554-558 (1959), but also because the initial inquiry is whether the prior conviction should have been considered a valid one as a matter of its legal status in North Dakota, at the time it was used at the instant trial in 1970.
In connection with the foregoing, a collateral question, raised by this Court at the oral argument, is whether the first-stage question is settled by the North Dakota court's recent resolution of it contrary to the position of defendant. State v. Lueder, supra. Our inquiry was couched in full-faith-and-credit terms. We accept the concession of both sides that, this being a foreign criminal judgment, full faith and credit does not apply. Leflar, American Conflicts Law (2d ed. 1968) § 88 at 202-203; cf. State v. Armsted Industries, 48 N.J. 544, 549 (1967). While comity considerations might ordinarily suggest deference to the North Dakota judgment, that course is forestalled if the injury of which defendant complains is of constitutional stature.[8] For reasons to be set forth, we do not propose in this opinion to decide the debated question of the constitutional dimensions of Kent-Gault, but will assume the affirmative of that thesis. In that light, we have in this case an independent obligation, regardless of the North Dakota judicial holding, to decide for ourselves the merits of defendant's contention that the United States Supreme Court would hold that a proper application of retroactivity principles entitles him to an invalidation of the 1965 armed robbery conviction in North Dakota. See State v. Coleman, 46 N.J. *71 16, 36-38 (1965), cert. den. 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966); cf. State v. Koch, supra.

A.
In Kent v. United States, supra, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, the United States Supreme Court construed the Juvenile Court Act for the District of Columbia to require that a juvenile court considering waiving its jurisdiction in favor of an adult prosecution of an offender must afford him counsel and a hearing and state its reasons if waiver is ordered. The issue of transfer of jurisdiction was described as "critically important" to the juvenile. Id. at 553, 86 S.Ct. 1045. The opinion of the court is ambiguous as to whether the stated requirements are of constitutional magnitude. Although there are several animadversions to due process and fundamental fairness, 383 U.S. at 553, 557, 562, 86 S.Ct. 1045, there is also this statement.
The Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia Circuit [on construction of the statute] provide an adequate basis for decision of this case, and we go no further. 383 U.S. at 556, 86 S.Ct. at 1055.
Counsel not having been provided the juvenile in that case, the court said it ordinarily would have remanded the matter to the juvenile court for a new determination as to waiver. But, the defendant being over 21, that court no longer had jurisdiction. Therefore the matter was remanded to the United States District Court (which had denied a motion to dismiss the adult indictment) for a hearing de novo on waiver, the conviction to be vacated if the waiver was "inappropriate," but to be confirmed by judgment if proper. 383 U.S. at 565, 86 S.Ct. 1045.
In re Gault, supra, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527, was a broad affirmation of the applicability of principles of procedural due process in proceedings for the determination *72 of juvenile delinquency in state courts. The court referred to its decision in Kent as follows:
In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), we considered the requirements for a valid waiver of the `exclusive' jurisdiction of the Juvenile Court of the District of Columbia so that a juvenile could be tried in the adult criminal court of the District. Although our decision turned upon the language of the statute, we emphasized the necessity that `the basic requirements of due process and fairness' be satisfied in such proceedings. Id. at 12, 87 S.Ct. at 1436.
These expressions have given rise to wide disagreement in lower federal and state courts as to whether Kent, or Kent with its Gault gloss, established a constitutional right of counsel at a juvenile court waiver proceeding. A majority of both the federal[9] and state[10] courts appears to have held or assumed such a right established. Compare Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), where the court held the "constitutional safeguard" (id. at 368, 90 S.Ct. 1068) of proof of guilt "beyond a reasonable doubt," to be applicable to the adjudicatory stage of juvenile delinquency proceedings, yet noted (id. at 359, n. 1, 90 S.Ct. at 1070) that "As in Gault `we are not here concerned with * * * the pre-judicial stages of the juvenile process * * *'." See also McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1972, 29 L.Ed.2d 647 (1971), holding the guarantee of jury trial provided by the Fifth Amendment inapplicable *73 to juvenile court proceedings. The court emphasized anew that it had never held "that all rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding." Id. at 533, 91 S.Ct. at 1980. (emphasis in original)
Absent an express and unambiguous ruling by the United States Supreme Court as to the constitutional underpinning of the Kent rule, we shall not make such a determination ourselves, but shall, as already noted, treat the question of retroactivity as though Kent did enunciate a ruling concerning constitutionally mandated procedures in a juvenile court waiver proceeding.

B.
The leading case analyzing the factors required to be taken into account in deciding whether newly recognized constitutional rights in criminal law are to be accorded retroactive effect is Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967). The court there was giving consideration to the matter of retroactive effect of a new rule concerning the right of assistance of counsel at a pretrial identification of a suspect, declared the same day Stovall was decided, in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1199 (1967). To the extent that Kent also involved a right to counsel in other than the guilt-adjudicative phase of a penal proceeding, Wade and Kent are somewhat comparable for retroactivity analysis.
In explaining, in Stovall, why the Wade rule would not be applied retroactively to identifications made prior to the date of those decisions, the court enunciated a tripartite test: (a) purpose of the new rule in terms of the truth-determining process; (b) extent of reliance on old rule; and (c) effect of retroactivity on law enforcement or administration of criminal justice. It said (388 U.S. at 297-298, 87 S.Ct. at 1970):
*74 It is true that the right to the assistance of counsel has been applied retroactively at stages of the prosecution where denial of the right must almost invariably deny a fair trial, for example, at the trial itself, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 ALR 2d 733, or at some forms of arraignment, Hamilton v. Alabama, 368 U.S. 52, 7 L.Ed.2d 114, 82 S.Ct. 157, or on appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. `The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent.' Tehan v. Shott, supra, 382 U.S. [406] at 416 [8 S.Ct. 459 at 465], 15 L.Ed.2d [453] at 460. We have also retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial. See for example Jackson v. Denno, 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774, 1 ALR 3d 1205. Although the Wade and Gilbert rules also are aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification evidence, `the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree.' Johnson v. New Jersey, supra, 384 U.S. [719] at 728-729 [86 S.Ct. 1772 at 1778] 16 L.Ed. 2d [882] at 889. The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a `question of probabilities.' 384 U.S. at 729 [86 S.Ct. 1772 at 1778], 16 L.Ed.2d at 890. Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice.
Although the court recognized that the point of identification of a suspect is a "critical stage," id. at 298, 87 S.Ct. 1967, it recognized that, unlike cases of absence of counsel at a trial, "it may confidently be assumed that confrontations for identification can be and often have been conducted with scrupulous fairness and without prejudice to the accused at trial." Id. at 299, 87 S.Ct. at 1971. The court also emphasized that there had been widespread previous reliance on the validity of pretrial identifications without counsel and that imposition of the new rule retroactively would seriously disrupt the administration of criminal law, id. at 299-300, 87 S.Ct. 1967, citing such cases as Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) and *75 Tehan v. Shott, 382 U.S. 406, 8 S.Ct. 459, 15 L.Ed.2d 453 (1966).
The tripartite test thus put forth in Stovall has been relied upon in later decisions, with strong emphasis on whether "the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials * * *." Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971); United States v. Peltier, 422 U.S. 531, 535, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). Our New Jersey cases have adhered to these principles as guidelines for retroactivity of new criminal rules. See State v. Nash, 64 N.J. 464, 470-471 (1974).
The truth-determining criterion was applied in a juvenile delinquency context in Ivan v. City of New York, 407 U.S. 203, 90 S.Ct. 1951, 32 L.Ed.2d 659 (1972), which ruled retroactive the requirement of Re Winship, supra, 392 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, that the standard of guilt beyond a reasonable doubt was to be used in such proceedings. However, the constitutional right to counsel, upon which the present defendant places great emphasis, has not uniformly been accorded retroactive effect. As seen above, the mandate for counsel at pre-trial identification was not made retroactive.
Thus, too, the right to counsel at pre-guilt-determinative hearings has been analyzed according to the nature of the hearing. At a preliminary hearing in which a defendant must assert defenses or lose them, retroactivity was declared. Arsenault v. Massachusetts, supra, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5, holding retroactive White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). However, where the hearing included a potential bind-over to a court with jurisdiction over the crime, but the defendant was not put to any proofs or defenses, retroactivity was not ordered. Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972), holding prospective Coleman v. Alabama, *76 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). The Adams Court concluded that the "role of counsel at the preliminary hearing differs sufficiently from the role of counsel at trial in its impact upon the integrity of the factfinding processes as to require the weighing of the probabilities of * * * infection [caused by the absence of counsel] against the elements of prior justified reliance and the impact upon the administration of justice." 405 U.S. at 281, 92 S.Ct. at 919. Similar considerations, however, mandated the retroactivity of the right to counsel at sentencing. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968), holding retroactive Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). The right to appellate counsel is also accorded retroactive effect. Douglass v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).
Applying one or more of the foregoing principles of retroactivity, a clear majority of the decisions has held Kent (Kent-Gault) not to warrant first-stage retroactivity. Harris v. Procunier, 498 F.2d 576 (9 Cir.), cert. den. 419 U.S. 510, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974); In re Harris, 67 Cal.2d 876, 64 Cal. Rptr. 319, 434 P.2d 615 (Sup. Ct. 1967); Mordecai v. United States, 137 U.S. App. D.C. 198, 421 F.2d 1133 (1969), cert. den. 397 U.S. 977, 90 S.Ct. 1098, 25 L.Ed.2d 272 (1970); Acuna v. Baker, 418 F.2d 639 (10 Cir.1969); State v. Martin, 107 Ariz. 444, 489 P.2d 254 (Sup. Ct. 1971); Eyman v. Superior Court In and For County of Pinal, 9 Ariz. App. 6, 448 P.2d 878 (Ct. App. 1968); Stanley v. Peyton, 292 F. Supp. 209 (W.D. Va. 1968); Richardson v. State ex rel. Milton, 219 So.2d 77 (Fla. Dist. Ct. App. 1969); Smith v. Commonwealth, 412 S.W.2d 256 (Ky. Ct. App. 1967), cert. den. 389 U.S. 873, 88 S.Ct. 162, 19 L.Ed.2d 155 (1967); Hammer v. State, 3 Md. App. 96, 238 A.2d 567 (Ct. App. 1968); Neller v. State, 79 N.M. 528, 445 P.2d 949 (Sup. Ct. 1968); Bouge v. Reed, 254 Or. 418, 459 P.2d 869 (Sup. Ct. 1969); State v. Steinhauer, 216 Co. 2d 214 (Fla. Sup. Ct. 1968), cert. den. *77 sub nom. Steinhauer v. Florida, 398 U.S. 914, 90 S.Ct. 1698, 26 L.Ed.2d 79 (1970); People v. Terpening, 16 Mich. App. 104, 167 N.W.2d 899 (Ct. App. 1969); Commonwealth v. James, 440 Pa. 205, 269 A.2d 898 (Sup. Ct. 1970).
Contra: Kemplen v. State of Maryland, 428 F.2d 169 (4 Cir.1970); Cox v. United States, 473 F.2d 334 (4 Cir.) cert. den. 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973); United States ex rel. Turner v. Rundle, 438 F.2d 839 (3 Cir.1971).
Cf. the following cases, in each of which the court held Kent principles applicable as a matter of state law. Summers v. State, 248 Ind. 551, 230 N.E.2d 320 (Sup. Ct. 1967); Knott v. Langlois, 102 R.I. 517, 231 A.2d 767 (Sup. Ct. 1967); Dillenburg v. Maxwell, 70 Wash.2d 331, 413 P.2d 940 (Sup. Ct. 1966), mod. other gr., 70 Wash.2d 349, 422 P. 2d 783, cert. den. 386 U.S. 998, 87 S.Ct. 1320, 18 L.Ed. 2d 348 (1967).
We proceed to consider how the courts have applied given criteria of retroactivity to their conclusions concerning retroactivity of Kent (Kent-Gault).

C.
Perhaps the most frequently iterated justification for denying retroactivity to the Kent doctrine is that the juvenile waiver hearing plays no part in the process of determining guilt. At such a hearing the guilt or innocence of the juvenile is not in issue. The decisive factors are, ordinarily, the heinousness or seriousness of the alleged offense, the potential for the rehabilitative processes of the juvenile court, usually measured in terms of the previous record of the juvenile, and the necessity of safeguarding the public from the juvenile. See Brown v. Cox, 481 F.2d 622, 631 (4 Cir.1973). Thus, the limited nature of the waiver hearing was thought significant in Harris v. Procunier, supra, 498 F.2d at 579; Eyman v. Superior Court In and For County of Pinal, supra, 448 P.2d at 881-884; Richardson v. State ex rel. Milton, supra, 219 So. 2d at 79-80; and State v. Steinhauer, *78 supra, 216 So.2d 219. Some cases also refer to the purpose of the function counsel serves at such a hearing and conclude it was already served by the nature of the investigation and hearing conducted by the judge. Stanley v. Peyton, supra, 292 F. Supp. at 212; Eyman v. Superior Court In and For County of Pinal, supra, 448 P.2d at 881-884; Hammer v. State, supra, 238 A.2d at 568. The rationale of these cases finds support in the philosophy of Stovall v. Denno, supra, where, as indicated above, retroactive effect was denied the Wade requirement of counsel at pretrial identification procedures, in part because of the high incidence of fairness in the conduct of such procedures in the absence of counsel. 388 U.S. at 298-299, 87 S.Ct. 1926.
Without in any way depreciating the high value and significance of counsel for the juvenile at a waiver hearing (our own practice required it even prior to Kent), see Mordecai v. United States, supra, 421 F.2d at 1135; Kemplen v. State of Maryland, supra, 428 F.2d at 173-174, we recognize that, as a practical matter, the judicial decision for waiver is largely discretionary, is motivated basically by the seriousness of the offense and the prior record of the juvenile, and that once a ruling for waiver has been made a subsequent inquiry as to whether the presence of counsel would have produced a different result, would, in most cases, be a highly speculative enterprise.
The foregoing considerations are somewhat cognate to those which, in particular cases, have led courts to hold that even if the Kent rule were to be accorded retroactive effect, the failure to provide counsel was harmless error at most, because of the nature of the offense and the prior record of the juvenile. Courts which have given Kent retroactive effect have remanded for judicial determinations, de novo, with counsel present, as to whether the waiver of jurisdiction was appropriate, with directions to set aside the consequential criminal convictions only if the waiver were found improper. Kent v. United States, supra, 383 U.S. at 565, 86 S.Ct. 1045; Kemplen v. State of Maryland, supra, 428 *79 F.2d at 178; United States ex rel. Turner v. Rundle, supra, 438 F.2d at 843-844; Inge v. Slayton, supra, 395 F. Supp. at 567. If that remedy were granted in the instant case, the trial court would have had little or no choice in concluding that waiver was indicated.[11] The North Dakota crime here involved was armed robbery, and defendant, although only 17, had had a long series of conflicts with authority prior thereto. Waiver of juvenile court jurisdiction notwithstanding presence of counsel would have been practically a foregone conclusion. See Brown v. Cox, supra, 481 F.2d at 627-628. Cf. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Some courts have refused retroactivity on the ground that when the matter was presented for adjudication the defendant, as now true of the instant defendant, was well beyond the juvenile age limit and therefore no longer functionally able to be dealt with by the juvenile rehabilitative process. Mordecai v. United States, supra, 421 F.2d at 1138; Eyman v. Superior Court In and For County of Pinal, supra, 448 P.2d at 880-884; In re Harris, supra, 434 P.2d at 617-618; Smith v. Commonwealth, supra, 412 S.W.2d at 260; Bouge v. Reed, supra, 459 P.2d at 870-871. This ratio decidendi *80 is clearly applicable here, the defendant now being 29 years of age. The futility of any such approach here is of course underscored by the fact that defendant is now serving a 20-year federal prison sentence.
The other major factors cited by the courts against retroactivity for the Kent (Kent-Gault) rule are reliance by courts and law enforcement officials on the prior rule, see Harris v. Procunier, supra, 498 F.2d at 579; Stanley v. Peyton, supra, 292 F. Supp. at 212; Eyman v. Superior Court In and For the County of Pinal, supra, 448 P.2d at 881-884; Hammer v. State, supra, 238 A.2d at 569; State v. Steinhauer, supra, 216 So.2d at 219, and the effects of retroactivity on law enforcement. All of the just cited cases, and others, have placed weight on the latter factor. In relation to both of these elements, it is to be recalled that, as a first-stage retroactivity problem, we are required to assess these matters in their effect in North Dakota, not New Jersey.[12] As to reliance upon the pre-Kent local statute by the North Dakota judiciary, there can be no question. In relation to potential effects of retroactivity upon law enforcement in that state, we have no information which would permit an assessment. The inquiry is, in any event, somewhat hypothetical, since North Dakota has decided for itself that Kent is not retroactive, State v. Lueder, supra, and presumably will adhere to that decision no matter how we decide the present issue for purposes of this case.

D.
The State also argues, alternatively, that any constitutional deficiency in defendant's prior conviction arising from absence of counsel at the waiver proceedings has been rendered nugatory by virtue of the subsequent plea of guilty *81 to the charge of armed robbery at which defendant was attended by counsel. The counselled guilty plea is said to constitute "a break in the chain of events which has preceded it in the criminal process". Tollet v. Henderson, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). Defendant seeks to nullify the argument by citation of Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), where it was held that a plea of guilty by a defendant would not insulate a state's indictment of him for a felony from impugnment as a denial of due process where the same conduct had first been the basis for prosecution and conviction as a misdemeanor, and the defendant, upon pursuing his statutory right to a trial de novo therefrom in an appellate court, had been subjected to an increase of the former sentence upon his plea of guilty to the felony charge. The Blackledge court distinguished the cases relied upon here by the State in that, of the latter, although involving asserted waivers of claims of constitutional dimension, "none went to the very power of the State to bring the defendant into court to answer the charge brought against him". 417 U.S. at 30, 94 S.Ct. at 2103.
The Kent-type defect here invoked by defendant would seem amenable to waiver under Brady-Tollet principles rather than immune therefrom under Blackledge since there can be no question as to the "power" of the State to prosecute a juvenile offender as an adult, provided statutory or constitutional preconditions are first met.
We are not in accord with the view, recently expressed, that Blackledge "has carved out an exception" to the Tollet-Brady principle for claims "attacking the jurisdiction" of the court in which defendant was tried, the premise being that the criminal court lacks "jurisdiction" when preceded by a juvenile waiver hearing defective under Kent. Inge v. Slayton, supra, 395 F. Supp. at 565. We think this not *82 an apt example of the basic rationale of the Blackledge exception. But what does impress us about defendant's position in this regard is that a "waiver" by plea of guilty can hardly be regarded as a "knowing" and "intelligent" one when the defect allegedly waived  the lack of counsel at the waiver hearing  had not been adjudicated a constitutional shortcoming when the plea of guilty was entered. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); cf. State v. Johnson, 68 N.J. 349, 353-354 (1975).
Our ultimate holding in favor of the State on the Kent issue, therefore, does not depend at all on defendant's plea of guilty. The only significance the plea holds for us is that the defendant is presumptively not innocent of the act of armed robbery in North Dakota in 1965, for whatever weight that circumstance may have in relation to the justice of not applying Kent retroactively in this case.

E.
We may summarize our position against recognition of Kent (Kent-Gault) as effective retroactively to invalidate the North Dakota conviction (first-stage issue) as a matter of defendant's constitutional rights in North Dakota, as follows. There is an open question whether Kent-Gault is of constitutional stature. But even if it is, retroactivity is not mandated. The absence of counsel at the North Dakota waiver proceedings was extremely unlikely to have prejudiced defendant. In the light of his prior record and the nature of the offense, the juvenile court would in any case have waived its jurisdiction in favor of prosecution as an adult. The most defendant would now be entitled to, in any event, would not be the outright invalidation of his prior conviction, but a de novo judicial redetermination, the defendant being counselled, of the appropriateness of the waiver when made. Such a redetermination would, with practical certainty, result in confirmation *83 of the original waiver determination. And, absolutely decisive of the matter of retroactivity is the consideration that the defendant's present age, history and penal status would render impossible any effort by a juvenile court now to accord him the benefit of its rehabilitative services.
Consequently, as a first-stage retroactivity matter, defendant's North Dakota conviction for armed robbery cannot be disturbed.[13]

III
We adverted above to the fact that this case implicates a second-stage as well as a first-stage retroactivity issue. See notes 5 and 6, supra. The first-stage question has been dealt with in Point II. The second-stage retroactivity issue consists in the circumstance that defendant's present effort to invalidate his 1965 conviction upon the basis of a 1966 decision of the United States Supreme Court arises in the context, not of a North Dakota (or federal habeas) proceeding directly aimed at vacating the conviction, but of an effort to invalidate a 1970 New Jersey conviction because of the use by *84 the State of the 1965 conviction to affect defendant's credibility in that 1970 trial.[14]
It is our considered view that this aspect of the case renders the first-stage conclusion of prospectiveness of Kent, arrived at in Point II above, an a fortiori proposition on the whole case before us.
In this regard, considerations of reliance by New Jersey prosecutors and judges, in the trial of criminal cases, upon out-of-state records of convictions offered to affect credibility of criminal defendants, necessarily must be accorded great weight. So must those related to the effect upon law enforcement if convictions were generally subject to be upset on appeal because of Kent-type defects in prior convictions not made known to the court at trial.
We could of course partially meet the problem of disturbance of old New Jersey convictions, affected by introduction in evidence of Kent-defective convictions, by barring any attempt to raise the point in cases where the New Jersey conviction has become final and time for direct appeal expired, as in State v. Nash, supra, and State v. Koch, supra. But the problem would remain in situations where the New Jersey conviction, as here, is still under direct appeal. Use for impeachment of credibility of foreign convictions of young offenders, sometimes antedating Kent, have of course been frequent in our criminal trials. The records of such convictions, whether before or after Kent, are highly unlikely to include the information that they followed juvenile waiver proceedings, much less as to whether the defendant was uncounselled thereat, unless the conviction was reversed or set aside on that ground. It is therefore unlikely that anyone concerned with the trial, including defendant's attorney, *85 would be apt to appreciate the likelihood of a Kent defect in the proffer of a foreign conviction of any vintage.
It is thus apparent that a precedent according a Kent-type defect the effect of nullifying a later New Jersey conviction would have serious adverse implications for the administration of criminal justice in this State.
The foregoing considerations fortify our conclusion that the Kent-based argument may not be the ground for a reversal of defendant's conviction at the trial herein.

IV
In reversing because of introduction of the North Dakota conviction, the Appellate Division found it unnecessary to consider defendant's additional claim of error concerning the rebuttal testimony of the state witness Kathy Mayer. 137 N.J. Super. at 76. In view of our conclusion on the other issues it is desirable that we dispose of defendant's contentions as to the Mayer testimony in order to bring this long litigation to an end. We have given careful consideration to the arguments in relation thereto set forth in the Appellate Division briefs and find no trial error in that regard.

V
Without having raised the point either at trial (see note 2, p. 2, supra) or before the Appellate Division, defendant has briefed before us the argument that his prior conviction should not have been admitted at trial under any circumstances or for any purpose. He contends that State v. Hawthorne, 49 N.J. 130 (1967), holding that N.J.S.A. 2A:81-12 mandates admissibility of prior evidence of convictions in relation to the credibility of a testifying defendant, should be overruled or modified. The defendant not having objected to the admissibility of the North Dakota conviction on that ground at trial, he has no right to raise it on appeal except to invoke the Court's discretion on grounds of plain *86 error. R. 2:10-2. We are disinclined to accept the issue on plain error grounds in all the attendant circumstances.[15]
The judgment of the Appellate Division is reversed and defendant's conviction is reinstated.
For reversal  Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD  7.
For affirmance  None.
NOTES
[1] Defendant was not sentenced until 1973 because of his absence from the State after the trial. In the interim he was convicted by a federal court of armed robbery of a bank in Oregon and is now serving a 20-year sentence therefor.
[2] The only basis for the objection by defendant to the prior conviction at the trial was the allegation that defendant was 16 years of age at the time and had pleaded guilty without benefit of counsel. The latter statement was not true. Defendant had counsel when he pleaded.
[3] At the trial defendant charged that the police targeted him for prosecution for the instant crime because of his prior record.
[4] The Burgett, Tucker and Koch cases, taken together, hold that when the conviction of an uncounselled defendant is later used in a criminal trial either to impeach the credibility of the defendant or to enhance his punishment, the resulting conviction will be invalidated no matter how old the prior conviction thus used. The rationale is based upon the full retroactivity of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), absence of counsel at the adjudicative stage of a criminal proceeding going to the integrity of the truth ascertainment process, Arsenault v. Massachusetts, 393 U.S. 5, 6, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968), and the fact of the prior conviction clearly having the capacity to affect the current trial outcome. See Tucker, 404 U.S. at 447-449, and note 4, p. 447, 92 S.Ct. 589.

In the present case, by contrast, the denial of counsel to defendant in the juvenile court waiver proceedings was not at the adjudicative stage of a criminal proceeding.
[5] We denominate this hereinafter as a "second-stage" retroactivity issue or question. Two other such cases are Inge v. Slayton, 395 F. Supp. 560 (E.D. Va. 1975) and Pollard v. Riddle, 420 F. Supp. 175 (E.D. Va. 1976), in both of which, prior convictions, attacked on Kent grounds, would have adversely affected the defendants under a recidivist statute.
[6] This is hereinafter referred to as a "first-stage" retroactivity issue or question.
[7] By contrast, retroactivity considerations of concern to New Jersey will arise when we deal with the second-stage retroactivity question, infra, Point III, p. 24 et seq.
[8] The briefs assume that if the deficiency in North Dakota is of constitutional dimension a decision of the United States Supreme Court for retroactivity would command state conformance. We accept the assumption for purposes of this case. But no such decision has been handed down.
[9] Some illustrative cases are Powell v. Hocker, 453 F.2d 652 (9 Cir.1971), overruled as to retroactivity, sub nom. Harris v. Procunier, 498 F.2d 576 (9 Cir.1974); Geboy v. Gray, 471 F.2d 575 (7 Cir.1973); Kemplen v. State of Maryland, 428 F.2d 169 (4 Cir.1970); United States ex rel. Turner v. Rundle, 438 F.2d 839 (3 Cir.1971); Mordecai v. United States, 137 U.S. App. D.C. 198, 421 F.2d 1133 (1969).
[10] E.g., State v. Steinhauer, 216 So.2d 214 (Sup. Ct. Fla. 1968), cert. den. sub nom. Steinhauer v. Florida, 398 U.S. 914, 90 S.Ct. 1698, 28 L.Ed.2d 79 (1970); Summers v. State, 248 Ind. 551, 230 N.E.2d 320 (Sup. Ct. 1967).
[11] We cannot agree with the Appellate Division's reasons for refusing to consider the use of a remand here. 137 N.J. Super. at 76, note 5. The first was that in the cases where that recourse was used the validity of the prior conviction for evidential purposes was not in issue (i.e., the case was a first-stage situation). We think this circumstance militates for, rather than against, use of the remand approach. In a first-stage situation only one conviction is threatened. In a second-stage case, as here, two convictions are impugned.

The second reason advanced by the Appellate Division was that a de novo hearing on the matter of waiver was not "a practicable solution to the problem presented". Ibid. We see no reason why not. Other courts have found such a step practicable (when they did not consider the result a foregone conclusion, as we do here). Surely the interests of according justice to the public as well as to the juvenile would require such a recourse rather than the absolute nullification of both the North Dakota and New Jersey convictions. See Point III, infra.
[12] However, we shall be considering the elements of reliance and law enforcement in relation to New Jersey when we come to examine the second-stage implications of retroactivity here; infra, p. 83 et seq.
[13] Defendant's brief carelessly asserts that two convictions of defendant in North Dakota when a juvenile, not just the armed robbery one referred to above, were used at trial to reflect upon his credibility. This is not a fact. Although materials supplied the court indicate defendant was convicted of burglary (or breaking and entering) at about the same period of time as the armed robbery conviction here in question (see 137 N.J. Super. at 73-74), our close scrutiny of the trial record indicates that there was reference to only a single conviction  that for armed robbery  and that all allusions thereto before the jury, whether by defense counsel, prosecutor or court, were to "the" or "a" prior conviction, or words of similar import.

For this reason we have no concern with post-argument information submitted to us by defendant that the courts of North Dakota have recently set aside the burglary (breaking and entering) conviction. There is no substantiation for defendant's further implication that this fact somehow impairs the subsistence of the armed robbery conviction.
[14] The State has not raised the question whether defendant's failure to object to the North Dakota conviction at the present trial on Kent grounds should require rejection of that ground of appeal as not constituting plain error; see R. 2:10-2. We pass the point.
[15] The Court has granted certification to reconsider State v. Hawthorne, supra, State v. Sands, 71 N.J. 345 (1976). The judgment in the instant case is of course without prejudice to defendant's right to seek post-conviction relief after our adjudication of State v. Sands, supra.